**AMCHEM PRODUCTS, INC.**

v.

**GAF CORPORATION and Russell Train.**

**Civ. A. No. C74-1322A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

March 14, 1975.

John A. Pickens and Kirk McAlpin, King & Spalding, Atlanta, Ga., John D. Conner & William J. Wellman, Sellers, Conner & Cuneo, Washington, D. C., Ernest G. Szoke, Gen. Counsel, Ambler, Pa., for Amchem.

J. D. Fleming, Jr., Sutherland, Asbill & Brennan, Atlanta, Ga., for GAF.

John W. Stokes, Jr., U. S. Atty., Beverly B. Bates and William D. Mallard, Jr., Asst. U. S. Attys., Atlanta, Ga., for Train.

Anthony P. Brown, Pillsbury, Madison & Sutro, San Francisco, Cal., for Nat. Agri. Chem. Ass'n.

## ORDER

EDENFIELD, Chief Judge.

This action seeks an interpretation of federal statutes governing the registration of plant growth regulators and a determination of the effect of those statutes on the dispute which has arisen between the parties. The court has held several hearings in this case and this order will dispose of the entire case.

### Statement of Facts

In 1961 plaintiff Amchem and defendant GAF entered into a screening agreement. Under the terms of this agreement GAF was to develop new chemical compounds. These compounds were then to be submitted to Amchem which would attempt to develop commercial agricultural applications for them. Pursuant to this agreement GAF submitted to Amchem a chemical now known as ethephon. Amchem in turn developed a viable commercial use for ethephon.[1] By 1971 Amchem was prepared to begin commercial distribution of ethephon. Amchem proposed to distribute its pesticide under the brand name Ethrel. The sole active ingredient of Ethrel is ethephon.

Before distribution could begin, it was necessary for Amchem to comply with certain federal statutes regulating the distribution of pesticides. The Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C.A. § 346a(d)(1), requires that a residue tolerance be established for the pesticide. From June 4, 1971 through October 10, 1972, Amchem submitted data in support of its application for the required residue tolerance.[2] The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C.A. § 135, required that the pesticide also be registered for its specific intended uses. From July 17, 1970, until September 29, 1972, Amchem submitted data in support of its petition for registration under

---

1. Ethephon is marketed as a plant growth regulator which increases the yield of certain plants rather than as a pesticide to control or eliminate insects. Nevertheless, in this suit ethephon has frequently been referred to as a pesticide because one of the relevant statutes broadly defines the term pesticide to include "any substance or mixture of substances intended for use as a plant regulator, defoliant, or desiccant." 7 U.S.C.A. § 136(u).

2. This span of time includes all data submitted in proceedings related to apples, cherries, and tomatoes. Although Amchem has registered Ethrel for use on other products, the parties have agreed that these other products are not involved in this controversy. Transcript of hearing of October 31, 1974, p. 48.

FIFRA. Ethrel was registered and distribution began. On November 2, 1973, GAF submitted an application for registration of its product Cepha. That application set forth the entire chemical composition of Cepha, noted that Cepha's composition was identical to that of Ethrel, and asked that Cepha be registered on the basis of the information submitted in support of Ethrel. The Administrator registered Cepha without requesting any additional information.

On July 2, 1974, Amchem filed this suit. The complaint sought (1) an injunction preventing GAF from distributing Cepha; (2) a declaratory judgment that Cepha's registration is invalid; and (3) an accounting for profits from the purportedly unlawful distribution of Cepha. The case hinges on the propriety of the Administrator's decision to register Cepha on the basis of information in the Ethrel file.

At the outset it should be noted that several propositions have been agreed on by all parties. No party has contended that sufficient information was submitted with GAF's application to independently support registration. It is also uncontested that the Administrator could not properly have registered Cepha on the basis of GAF's application alone and that information in the Ethrel file was in fact considered in ruling on GAF's application for Cepha.[3] Finally, it is uncontested that if all of the information in the Ethrel file could be considered in ruling on GAF's application the registration of Cepha was proper.

### Enactment and Provisions of FEPCA

Plaintiff's first contention is that consideration of the data in its file was forbidden by the amendments to FIFRA contained in Pub.L. 92–516. In order to resolve this question it will be necessary to briefly summarize the changes made in FIFRA by these amendments and to determine their effective date.

On October 21, 1972, the Federal Environmental Pesticide Control Act (FEPCA), 7 U.S.C.A. § 136, was enacted. Pub.L. 92–516, 1972 U.S.Code Cong. & Admin.News, p. 1139. It substantially revised the provisions of FIFRA. Although most provisions of FIFRA were affected by the amendments, the only provisions at issue here are those relating to registration of pesticides. Under the original provisions of FIFRA the Secretary had discretion to require "the submission of the complete formula" of the pesticide seeking registration, 7 U.S.C.A. § 135b(b), and could also request "a full description of the tests made and the results thereof upon which the claims are based." 7 U.S.C.A. § 135b(a)(4). The only provisions of FIFRA which related to disclosure or use of the information filed in applications for registration of a product were two subsections forbidding the disclosure of formulas of products. 7 U.S.C.A. §§ 135(c)(4) and 135f(c). FEPCA, on the other hand, set forth for the first time relatively detailed congressional instructions on the disclosure and use of such information. First, the Administrator (who had in the meantime replaced the Secretary, see n. 7, infra) is required to "publish guidelines specifying the kinds of information which will be required to support the registration of a pesticide", 7 U.S.C.A. § 136a(c)(2). Second (contrary to the superseded provisions of FIFRA), information on formulas could now be disclosed under specified circumstances, 7 U.S.C.A. § 136h(b). Third, disclosure of "confidential" information including "trade secrets or commercial or financial information" is twice forbidden. 7 U.S.C.A. § 136h(b) and § 136j(a)(2)(D). Fourth, although dis-

---

3. GAF contends that there was sufficient information in the public domain to allow registration. The record is, however, wholly inadequate to support such a conclusion and the evidence is clear that the Administrator never made such a determination.

closure is forbidden, information filed in support of an earlier application may be considered in ruling on a subsequent application by another party only under specified conditions.[4] Under FEPCA information which is protected from disclosure by § 136h(b) cannot be considered under any circumstances other than with permission of the applicant who submitted it, and information not protected by § 136h(b) can be considered only after an offer of reasonable compensation. 7 U.S.C.A. § 136a(c)(1)(D). It is clear that FEPCA radically altered the law controlling consideration of such information.

■■  The next question to be considered is the date that these provisions of FEPCA took effect. Public Law 92–516, which contained FEPCA, took effect on October 21, 1972. A miscellaneous provision of that law provided that:

"Two years after the enactment of this Act the Administrator shall have promulgated regulations providing for the registration and classification of pesticides under the provisions of this Act and *thereafter shall register all new applications under such provisions.*" Pub.L. 92–516 § 4(c)(1), 1972 U.S.Code Cong. & Admin.News, p. 1170 (emphasis added).

The clear meaning of this statutory provision is that the Administrator is granted up to two years to promulgate regulations implementing the registration provisions of FEPCA and that registration

applications filed prior to promulgation of such regulations shall be ruled on in accordance with the earlier provisions of FIFRA.[5] On November 19, 1973, the Administrator published an interim policy statement making the registration provisions of FEPCA effective immediately but deferring issuance of detailed regulations on compensation. Therefore the registration provisions of FEPCA took effect on that date.

■  As noted above the plaintiff has contended that consideration of the data in its file is forbidden by the provisions of 7 U.S.C.A. § 136a(c)(1)(D). This may well be true but it has no bearing on this case. GAF filed its petition for registration on November 2, 1973. The registration provisions of FEPCA did not take effect until November 19, 1973. Therefore Cepha is registered under the original provisions of FIFRA and FEPCA's registration provisions were not applicable to GAF's application.[6]

*Consideration of Data Under FIFRA*

Plaintiff's next contention is that, even if FEPCA was not in effect, the data could not be considered in ruling on an application under FIFRA. As seen above the applicable provision of FIFRA only forbids disclosure of information revealing formulas of products. One of the few pieces of information which was contained in GAF's application was the complete formula of the product in question. There are no provisions of FIFRA which regulate the

---

4. FEPCA provides in pertinent part that: "[D]ata submitted in support of an application shall not, without permission of the applicant, be considered by the Administrator in support of any other application for registration unless such other applicant shall have first offered to pay reasonable compensation for producing the test data to be relied upon and such data is not protected from disclosure by section 136h(b) of this title. . . . ." 7 U.S.C.A. § 136a(c)(1)(D).

5. Plaintiff has engaged in a valiant effort to persuade the court that this provision should

be given some interpretation other than its clear import. All of these contentions, although ingenious, are without merit.

6. Since Cepha was registered under the provisions of FIFRA, it will be required to reregister under the provisions of FEPCA within two years from October 21, 1974. Pub.L. 92–516 § 4(c)(2). The court, of course, expresses no opinion on the proper standard to be applied at that time.

intra-agency use of other information supplied by prior applicants. Although there is some testimony to the contrary, the court concludes that the evidence establishes that information submitted by previous applicants was routinely considered in granting later applications to register a product with an identical formula.[7]

██ Amchem, as plaintiff, carries the burden of establishing that it was improper for the Administrator to rely on the data in Amchem's file to approve GAF's application for registration. The court has already decided that the provisions of FEPCA which might preclude such consideration were not yet in effect, that there were no provisions in FIFRA which forbid such consideration, and that it was a long-established agency practice to consider such information. In light of these findings Amchem cannot carry its burden without advancing some affirmative legal principle which would support a ruling that the Administrator's decision should be set aside. No such principle has been advanced. The plaintiff has failed to produce evidence or authority which would justify the court in setting aside the Administrator's decision to grant GAF's application for registration of Cepha for use on apples, cherries, and tomatoes.[8] All other relief sought by Amchem was dependent on a finding that the registration was invalid. Accordingly, the court finds for the defendants and against the plaintiff.

7. The responsibility for enforcing FIFRA was vested in the United States Department of Agriculture (USDA) until December 2, 1970, when it was transferred to the Environmental Protection Agency (EPA). Reorganization Plan # 3 of 1970, 35 Fed.Reg. 15623, 84 Stat. 2086. It appears that EPA adopted a more vigorous position in favor of its right to disclose information in its application files than had USDA. The court, however, can detect no change in the policy which allowed consideration of information which was supplied in support of prior applications in ruling on pending applications. Such consideration was apparently freely allowed both by EPA and USDA. The court is aware that the testimony of Dr. Hays contradicts this conclusion but is convinced that the evidence taken as a whole strongly supports it.

8. A substantial segment of Amchem's briefs has been devoted to the contention that it would have been improper for the Administrator to consider any information which was legally protected as a trade secret. While this may be a correct statement of a legal principle, Amchem has not proven that any specific information was entitled to protection as a trade secret, much less that reliance on that information was crucial to the decision to grant GAF's registration.