AMCHEM PRODUCTS, INC.

v.

GAF CORPORATION and Russell Train.

Civ. A. No. C74–1322A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Sept. 13, 1976.

---

John A. Pickens and Kirk M. McAlpin of King & Spalding, Atlanta, Ga., John D. Conner and Wm. J. Wellman of Sellers, Conner & Cuneo, Washington, D. C., Ernest G. Szoke, Gen. Counsel, Ambler, Pa., for Amchem.

William D. Mallard, Jr., Asst. U. S. Atty., Atlanta, Ga., for Russell Train.

Anthony P. Brown of Pillsbury, Madison & Sutro, San Francisco, Cal., for Natl. Agri. Chem. Ass'n.

J. D. Fleming, Jr. of Sutherland, Asbill & Brennan, Atlanta, Ga., for GAF.

## ORDER

EDENFIELD, Chief Judge.

Plaintiff has brought this action challenging the validity of defendant GAF's registration of its commercial chemical with the Environmental Protection Agency. The case is currently before the court on remand from the Fifth Circuit Court of Appeals.

In its order of March 14, 1975, this court found that the defendant had properly registered its chemical pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 135, and that the amendments to FIFRA contained in the Federal Environmental Pesticide Control Act (FEPCA), 7 U.S.C. § 136, Pub.L. 92–516, enacted on October 21, 1972, were not in effect at the time the defendant's registration was approved, 391 F.Supp. 124 (N.D. Ga.1975).[1] On April 12, 1976, the Court of Appeals vacated and remanded that judgment "for reconsideration in light of the 1975 amendment to [FIFRA], Pub.L.No. 94–140, 89 Stat. 751, 755," 529 F.2d 1297. The sole issue now before this court, therefore, is whether the 1975 amendment has in any way affected this court's prior judgment.

That amendment revised § 3(c)(1)(D) of FIFRA, 7 U.S.C. § 136a(c)(1)(D), by adding the following statement:

"This provision with regard to compensation for producing the test data to be relied upon shall apply with respect to all applications for registration or reregistration submitted on or after October 21, 1972."

Both parties appear to agree that this provision was added to deal with the fact that numerous applications had been approved after October 21, 1972, without compliance with the 1972 amendment, because EPA did not consider the Act effective until November 19, 1973 (see n.1, supra). The plaintiff argues that Congress, in passing the 1975 addition, intended to clarify its original intent to have the 1972 amendments become effective immediately upon passage, and that applications which were not processed in compliance with the 1972 amendments may now be challenged if it can be demonstrated that the Administrator used data supplied by another applicant without providing adequate compensation.

1. Section 3(c)(1)(D) of FEPCA, 7 U.S.C. § 136a(c)(1)(D), provides in pertinent part that: ". . . [D]ata submitted in support of an application shall not, without permission of the applicant, be considered by the Administrator in support of any other application for registration unless such other applicant shall have first offered to pay reasonable compensation for producing the test data to be relied upon and such data is not protected from disclosure by section 136h(b) of this title." The defendant concedes that information provided in the plaintiff's application for its chemical was considered in ruling on defendant's application. However, this court concluded in its last order that, under the terms of § 4(c)(1) of FEPCA, the above-quoted section did not become effective until November 19, 1973, when the Administrator published an interim policy statement making the registration provisions of FEPCA effective immediately, 391 Supp. at 127. Thus, since the defendant filed its petition for registration on November 2, 1973, it was not required to provide compensation to the plaintiff.

The clear legislative history does not support plaintiff's position. The Senate Agricultural Committee, in proposing the addition to § 3(c)(1)(D) explicitly set forth in its report the reasons for the addition:

"The second key issue which the Committee amendments resolve concerns the applications to which the provision applies: i. e., does it apply to all applications, or only those submitted after a particular date. * * *

"The Committee has considered the question, and has resolved that the more desirable course is to treat section 3(c)(1)(D) as being effective on October 21, 1972. Thus, the provision with regard to compensation for test data applies with respect to all applications for registration submitted on or after October 21, 1972. However, it is now some three years later, and it is neither desirable nor possible to unravel the past, and cast doubt on the validity of the thousands of registrations which the Administrator has issued since October 21, 1972, which have not been subject to Section 3(c)(1)(D), pursuant to the Interim Policy Statement. However, since it is possible that the Administrator has still not acted on some applications which were first submitted before the date of the Interim Policy Statement, the Committee amendment would resolve any remaining dispute by requiring the Administrator to apply 3(c)(1)(D) in approving any such applications in the future.

"It should be noted that any applications granted without application of the 3(c)(1)(D) provisions, under the interpretation reflected in the Interim Policy Statement, resulted in registrations under the 1947 Act, and hence must be 'reregistered' under the 1972 amendments and the Administrator's implementing regulations. 'Reregistration' is about to commence; in accordance with Section 4 of the bill, the reregistration process must be completed by October 21, 1977. Pursuant to Section 2(z) of the Act, registration is defined to include reregistration. Accordingly, Section 3(c)(1)(D) is applicable to the reregistration process.

Reregistration will therefore require subjecting persons to section 3(c)(1)(D) who received registrations after October 21, 1972, but who were not subject to the provisions of section 3(c)(1)(D) under the then-prevailing interpretation of the Administrator." Report of Senate Committee on Agriculture and Forestry on H.R. 8841, S.Rep. 94–452, 94th Cong., 2d Sess. (1975), at 10–11.

It is apparent that Congress added the 1975 language solely to insure that all remaining applications which were received after October 21, 1972 were processed in accordance with the terms of Section 3(c)(1)(D), and that Congress did not intend to affect the validity of applications which had already been processed. The court concludes, therefore, that the 1975 amendment to FIFRA has no effect upon the merits of this case and hereby READOPTS its previous finding in favor of the defendants.

So ORDERED, this 13th day of September, 1976.