Sam P. McGILL et al., Petitioners,

v.

ENVIRONMENTAL PROTECTION AGENCY et al., Respondents.

No. 76–4353.

United States Court of Appeals, Fifth Circuit.

April 20, 1979.

Ben B. Blackburn, Wayne T. Elliott, S.E. Legal Foundation Inc., Atlanta, Ga., for petitioners.

J. David Dyson, Asst. Atty. Gen., Atlanta, Ga., for Ga. Dept. of Agriculture.

Barbara A. Babcock, Asst. Atty. Gen., Dept. of Justice, Civil Div., Joan V. Bernstein, Gen. Counsel, Richard J. Denney, Jr., Assoc. Gen. Counsel, David E. Menotti, Deputy Assoc. Gen. Counsel, Thomas O. McGarity, E. P. A., Robert E. Kopp, Atty., Dept. of Justice, Russell E. Train, Administrator, E. P. A., Mark H. Gallant, Dept. of Justice, Joseph B. Scott, Dept. of Justice, Civil Div., Washington, D. C., for respondents.

Millard R. Rich, Jr., Deputy Atty. Gen., Raleigh, N. C., for N. C. Dept. of Agriculture.

Clausen Ely, Jr., Peter Barton Hutt, Washington, D. C., for Pineapple Growers Ass'n of Hawaii.

William A. Butler, Jacqueline Warren, Washington, D. C., for Environmental Defense Fund.

Before MORGAN, FAY and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In this case we are called upon to decide how to fill a lacuna in the administrative

review procedure under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) 7 U.S.C. § 136 *et seq.*: should consumers of a pesticide who oppose cancella-tion of all pesticide-use registrations have the right to prevent the indefinite suspension of a hearing under 7 U.S.C. § 136d(a) and (b)[1] when both the registrant of the

1. **§ 136d.  Administrative review; suspension**
   **(a) Cancellation after five years.**—(1) Procedure.—The Administrator shall cancel the registration of any pesticide at the end of the five-year period which begins on the date of its registration (or at the end of any five-year period thereafter) unless the registrant, or other interested person with the concurrence of the registrant, before the end of such period, requests in accordance with regulations prescribed by the Administrator that the registration be continued in effect: Provided, That the Administrator may permit the continued sale and use of existing stocks of a pesticide whose registration is canceled under this subsection or subsection (b) to such extent, under such conditions, and for such uses as he may specify if he determines that such sale or use is not inconsistent with the purposes of this Act and will not have unreasonable adverse effects on the environment. The Administrator shall publish in the Federal Register, at least 30 days prior to the expiration of such five-year period, notice that the registration will be canceled if the registrant or other interested person with the concurrence of the registrant does not request that the registration be continued in effect.

   (2) Information.—If at any time after the registration of a pesticide the registrant has additional factual information regarding unreasonable adverse effects on the environment of the pesticide, he shall submit such information to the Administrator.

   **(b) Cancellation and change in classification.** If it appears to the Administrator that a pesticide or its labeling or other material required to be submitted does not comply with the provisions of this Act or, when used in accordance with widespread and commonly recognized practice, generally causes unreasonable adverse effects on the environment, the Administrator may issue a notice of his intent either—

   (1) to cancel its registration or to change its classification together with the reasons (including the factual basis) for his action, or

   (2) to hold a hearing to determine whether or not its registration should be canceled or its classification changed.

   Such notice shall be sent to the registrant and made public. In determining whether to issue any such notice, the Administrator shall include among those factors to be taken into account the impact of the action proposed in such notice on production and prices of agricultural commodities, retail food prices, and otherwise on the agricultural economy. At least 60 days prior to sending such notice to the registrant or making public such notice, whichever occurs first, the Administrator shall provide the Secretary of Agriculture with a copy of such notice and an analysis of such impact on the agricultural economy. If the Secretary comments in writing to the Administrator regarding the notice and analysis within 30 days after receiving them, the Administrator shall publish in the Federal Register (with the notice) the comments of the Secretary and the response of the Administrator with regard to the Secretary's comments. If the Secretary does not comment in writing to the Administrator regarding the notice and analysis within 30 days after receiving them, the Administrator may notify the registrant and make public the notice at any time after such 30-day period notwithstanding the foregoing 60-day time requirement. The time requirements imposed by the preceding 3 sentences may be waived or modified to the extent agreed upon by the Administrator and the Secretary. Notwithstanding any other provision of this subsection (b) and section 25(d), in the event that the Administrator determines that suspension of a pesticide registration is necessary to prevent an imminent hazard to human health, then upon such a finding the Administrator may waive the requirement of notice to and consultation with the Secretary of Agriculture pursuant to subsection (b) and of submission to the Scientific Advisory Panel pursuant to section 25(d) and proceed in accordance with subsection (c). The proposed action shall become final and effective at the end of 30 days from receipt by the registrant, or publication, of a notice issued under paragraph (1), whichever occurs later, unless within that time either (i) the registrant makes the necessary corrections, if possible, or (ii) a request for a hearing is made by a person adversely affected by the notice. In the event a hearing is held pursuant to such a request or to the Administrator's determination under paragraph (2), a decision pertaining to registration or classification issued after completion of such hearing shall be final. In taking any final action under this subsection, the Administrator shall consider restricting a pesticide's use or uses as an alternative to cancellation and shall fully explain the reasons for these restrictions, and shall include among those factors to be taken into account the impact of such final action on production and prices of agricultural commodities, retail food prices, and otherwise on the agricultural economy, and he shall publish in the Federal Register an analysis of such impact.

pesticide uses and the Environmental Protection Agency have agreed to both the cancellations and the suspension?

The petitioners and the intervenors are users of the pesticide Mirex; they seek to overturn a settlement arranged between the Environmental Protection Agency and the Mississippi Authority for the Control of Fire Ants (the registrant) cancelling the only outstanding registrations for the production and use of Mirex, and to require the EPA to reopen and complete suspended hearings on the possible cancellation of the same Mirex registrations even without the further participation of the registrant.[2] The question before us today is whether Congress has granted users who are not registrants the right to prevent such a settlement and to require the completion of the hearing. Before considering the statutory provisions at issue, we briefly review the history of the case.

On March 23, 1973, the Administrator of the EPA gave notice of his intention to hold a hearing,[3] pursuant to Section 6(b)(2) of FIFRA, 7 U.S.C. § 136d(b)(2), to determine whether or not the outstanding registrations of Mirex products, at that time held by Allied Chemical Corporation, should be cancelled or amended. *See* 38 Fed.Reg. 8616 (1973). All of the petitioners responded to the Administrator's statement of the issues and became active participants in the hearing. *See* EPA Regulations for the Enforcement of the Federal Insecticide, Fungicide, and Rodenticide Act, 40 C.F.R. §§ 164.24 and 164.31. The petitioners were interested in the hearings solely because they were users of Mirex; at no time did petitioners ever hold registrations for the production, shipment, sale, or distribution of Mirex. Hearings commenced in July 1973 and continued over the next three years, creating a record of more than 13,000 pages. In May 1976, Allied Chemical Corporation transferred its Mirex registrations to the Mississippi Authority for the Control of Fire Ants.

In September 1976, the Mississippi Authority offered to cancel the registrations voluntarily, to phase out production, and to suspend the pending proceedings indefinitely. The Administrative Law Judge temporarily suspended the hearings to allow the EPA time to consider the proposal. The Agency submitted the plan for comment to all participants in the hearing with a document eventually titled "Summary of Evidence and Other Information and Statement of Reasons." Although the petitioners and others, including the United States Department of Agriculture, objected to the plan, the Administrator of the EPA approved it and ordered the suspension of the hearing. This appeal followed the Administrator's decision.

■ The legislation under consideration here has never been construed in a published opinion of this court,[4] although other courts have had occasion to review various provisions of the act.[5] In 1972, FIFRA, which was originally enacted in 1947, was completely revised in the Federal Environmental Pesticide Control Act. The general purpose of the revisions was to expand EPA's supervisory role over the use of pesticides. *See* S.Rep.No.92–838, 92d Cong., 2d Sess. (1972), reprinted in [1972] U.S.Code Cong. & Admin.News, p. 3993. For exam-

---

**2.** All parties agree that the consumers, as interested persons, could not require continued participation by the registrant of the pesticide.

**3.** FIFRA Docket Number 293.

**4.** *But see Amchem Prods., Inc. v. GAF Corp.*, 5 Cir. 1976, 529 F.2d 1297, *vacating without opinion*, N.D.Ga.1975, 391 F.Supp. 124; *Louisiana v. Train*, 5 Cir. 1975, 514 F.2d 1070, *aff'g without opinion*, W.D.La., 392 F.Supp. 564.

**5.** *E. g., Environmental Defense Fund, Inc. v. EPA*, 1976, 179 U.S.App.D.C. 43, 548 F.2d 998 and cases cited at 179 U.S.App.D.C. 48, at 548

F.2d 1003 n.7; *Wyoming v. Hathaway*, 10 Cir. 1975, 525 F.2d 66, *cert. denied*, 1976, 426 U.S. 906, 96 S.Ct. 2226, 48 L.Ed.2d 830; *Mobay Chem. Corp. v. Costle*, W.D.Mo.1978, 447 F.Supp. 811, *appeal dismissed*, 1979, —— U.S. ——, 99 S.Ct. 644, 58 L.Ed.2d 549; *Dow Chem. Co. v. Train*, E.D.Mich.1976, 423 F.Supp. 1359. *See generally* Spector, *Regulation of Pesticides by the Environmental Protection Agency*, 5 Ecology L.Q. 233 (1976); Comment, *The Federal Environmental Pesticide Act of 1972: A Compromise Approach*, 3 Ecology L.Q. 277 (1973).

ple, the Act extended registration requirements to pesticides marketed in intrastate commerce, 7 U.S.C. § 136a(a), and increased the requirements for the submission of research, test data and other information to the EPA. *See, e. g.,* 7 U.S.C. § 136d(a)(2). It required previously registered pesticides to be re-registered to ensure that the registrations of older pesticides met the data requirements of the new law. *See Mobay Chemical Corp. v. Costle,* W.D.Mo.1978, 447 F.Supp. 811, 814 *appeal dismissed,* 1979, —— U.S. ——, 99 S.Ct. 644, 58 L.Ed.2d 549; 40 C.F.R. § 162.6(b)(5).

■ Although the revisions were aimed at increasing the EPA's ability to protect the environment, they were also designed to assure that the economic interests of farmers and other consumers would be fully considered before any pesticide was withdrawn from the market. For this reason, Congress required that any final action taken to cancel or change a registration take into account the impact on the production and prices of agricultural commodities and retail food prices. 7 U.S.C. § 136d(b). In addition, the Administrator of the EPA is required to notify the Secretary of Agriculture before any hearings on particular pesticides are announced, and the Secretary is permitted to comment on the proposed hearings in writing. *Id. See also* General Explanation of H.R. 10729, S.Rep.No.92–838, 92d Cong., 2d Sess. (1972).

Congress also granted certain specific rights of participation to "interested" and "adversely affected" persons (e. g., non-registrants who are pesticide users) in the sections of the Act directly under consideration here. In paragraph (a) of § 136d, the Administrator is instructed to cancel the registration of any pesticide at the end of any five-year period from the date of registration, unless the registrant, "or other interested person *with the concurrence of the registrant*" (emphasis supplied) requests that the registration be continued in effect. If, during the term of a registration, it appears that a pesticide does not comply with the Act or causes unreasonable adverse environmental effects, the Adminis-

trator is given authority in paragraph (b) either to issue a notice of intent to cancel or change a registration or to hold a hearing to determine whether a registration should be changed or cancelled. If the Administrator chooses to issue a notice of intent, the action proposed becomes effective after thirty days unless the registrant makes the necessary corrections, or "a request for a hearing is made by a person adversely affected by the notice." After a hearing, final action may be appealed to the appropriate circuit court of appeals by any person who will be adversely affected by the action and who has been a party to the administrative proceedings. 7 U.S.C. § 136n(b). *See also* Conf.Rep.No.92–1540, 92d Cong., 2d Sess. (1972), reprinted in [1972] U.S.Code Cong. & Admin.News, pp. 4130, 4133. Adversely affected persons may appeal from action taken to prevent an imminent hazard, and may participate in the expedited administrative hearings. 7 U.S.C. § 136d(c). However, if the Administrator has determined that an emergency exists that does not permit holding hearings before entering a suspension order, the participation of adversely affected persons is limited to filing briefs in the expedited hearings and appealing any final action. 7 U.S.C. § 136d(c)(3).

Although, as described above, Congress clearly intended to give non-registrants some rights under the statute, it failed to make provision for every contingency that might concern them. The Act says nothing about whether registrants have the right to prevent the cancellation of a pending hearing.

The legislative history suggests that the rights of non-registrants were recognized in the statute because certain Congressmen were concerned that a pesticide producer would choose not to defend a particular registration that was of small importance to the manufacturer, but of great importance to a particular agricultural group. All parties to this litigation agree that the testimony of Dr. Edwin A. Crosby, a representative of the National Canners Association, was instrumental in securing rights for non-registrants in the revised statute. His pro-

posed amendment [6] was designed to protect the rights of users of established pesticides if the producer-registrant decided not to defend against the cancellation or change of a particular registration. *See* Hearings on H.R. 10729 Before the Sub-Committee on Agricultural Research and General Legislation of the Senate Committee on Agriculture and Forestry, 92d Cong., 2d Sess. 294 (1972).[7]

The question before us is the scope of the amendment. Dr. Crosby was questioned by Senator Allen about the extent of third-party rights under the National Canners Association proposal. In response to Senator Allen's concern that a manufacturer might be forced to continue to produce the pesticide, Dr. Crosby's answer assumed that the product was being manufactured, and that EPA had proposed only to proscribe a specific use of it; he discussed the DDT case, where the registrant chose to defend the major uses but decided not to undertake the expense of defending the minor uses. Hearings, *supra* at 294. Following the hearing, the Agriculture and Forestry Committee amended Section 6(b), now § 136d(b), incorporating much of the language proposed by Dr. Crosby as spokesman for the Canners.[8] The committee reports accompanying the bill to the floors of Congress provide no further illumination concerning what the EPA calls "the unusual case [here presented] where the sole registrant wish[es] to acquiesce in the cancellation of *all* registrations of a pesticide and stop manufacturing its products."

All parties to this litigation have vigorously presented their respective interpretations of Congress's failure to deal with the question presented. The debate concerning the significance of congressional silence is almost as difficult to resolve as Bishop Berkeley's famous question concerning whether there is noise when a tree falls in the forest and no one is present to hear it. It would be sophistry for us to divine a congressional intent on a subject it did not consider. Nor would it be permissible for us simply to withhold judgment on the basis that there is no law to apply. Instead we must attempt, at least in part intuitively, to determine how we think Congress would have voted had the question been raised legislatively.

The EPA and the Environmental Defense Fund take the position that the rights of non-registrants are limited to those explicitly granted in the statute. The non-registrants, taking a broader view of the matter, argue that the terms of the provision are not limited to the example discussed by Senator Allen and Dr. Crosby; they argue that Congress granted users the right to compel a hearing and thus implicitly gave them, as interested parties, an independent right to prevent the cancellation of a hearing.

Without confidence that, when we undertake in effect to act legislatively, we have congressional wisdom, and with complete awareness that a reasonable and plausible argument can be made for either course, we decide that the rights of non-

---

6. Dr. Crosby's amendment provided:

Any person who will be adversely affected by cancellation of a registration or change of classification also may file objections and request a public hearing within 30 days of public notice of the Administrator's intention to cancel the registration or to change the classification of a pesticide.

Hearings on H.R. 10729 before the Subcomm. on Agricultural Research and General Legislation of the Senate Comm. on Agriculture and Forestry, 92d Cong., 2d Sess. 298 (1972).

A similar amendment granting the right to appeal to "other interested persons" was proposed by Dr. T. C. Byerly, of the United States Department of Agriculture. Hearings, *supra*, at 111, 114–15.

7. Dr. Crosby proposed the same amendment to Senator Allen's subcommittee during the consideration of other bills to amend FIFRA. *See* Hearings on S. 232, S. 272, S. 660, and S. 745 before the Subcomm. on Agricultural Research and General Legislation of the Senate Comm. on Agriculture and Forestry, 92d Cong., 1st Sess. 519, 525 (1971).

8. "The proposed action shall become final and effective at the end of 30 days from receipt by the registrant, or publication, of a notice issued under paragraph (1) [7 U.S.C. § 136d(b)(1)], . . . unless within that time . . . a request for a hearing is made by a person adversely affected by the notice."

registrants are limited to those expressly granted in the statute. The general purpose of the FIFRA revisions in 1972 was to strengthen the ability of the EPA to protect the environment. Although Congress granted certain rights to non-registrants that are not often found in analogous statutes, it appears to have intended that users act with the consent of registrants or with respect to a commodity actually being produced for some purposes. In this case, the lengthy hearing now suspended may require only a relatively brief time to complete and the registrant may sit idly by without further expense, but if the users' position is correct, then any consumer might have caused a lengthy and expensive hearing purely on its own volition, even if the registrant and the EPA had reached a settlement agreement the day after the notice was issued. It is difficult for us to conclude that Congress intended *sub silentio* to tax the fisc with this kind of expense.

Our conclusion is buttressed by decisions examining the extent to which administrative agencies have discretion to suspend an incomplete hearing whose purpose had ended. This is "not a case in which the [Agency] has walked right up to the line and then refused to cross it—a case, in other words, in which all the evidence necessary to a determination had been received but the determination was not made." *Wisconsin v. FPC*, 1963, 373 U.S. 294, 311, 83 S.Ct. 1266, 1275, 10 L.Ed.2d 357, 369. *Compare Minneapolis Gas Co. v. FPC*, 1961, 111 U.S. App.D.C. 16, 294 F.2d 212 (once the FPC decided to hold a hearing under Section 4(e) of the Natural Gas Act, and the Hearing Examiner rendered an initial decision, it could not terminate the proceeding without rendering a decision on the issue presented by the Examiner).

Finally, we note that the non-registrants are *not* absolutely barred by this decision from attempting to register Mirex uses with the EPA. The statute does not prevent users from becoming registrants even though they are incapable of manufacturing the pesticide themselves. (The manufacturing facilities are separately regis-

tered under the statute. 7 U.S.C. § 136e.) The regulations permit registrations to be held by the broadest range of people:

> Any person in any state who distributes, sells, offers for sale, holds for sale, ships, delivers for shipment . . . or for any other reason desires to register a pesticide, may apply for the registration of such pesticide.

40 C.F.R. § 162.6(a)(1). Indeed continued registration without a manufacturer being named is the explicit goal of the appellant-users.

Suspension of the hearing does not mean that, if new registrations are ever desired, future litigation must begin at zero. We do not condemn the data from the hearing to irreparable loss. If new registrations for Mirex-based products are sought, the hearing data and transcripts may be taken into evidence in any future proceedings at the request of any participant whether or not it was a party to the hearing below. *See* 40 C.F.R. § 164.81(a) & (e).

For these reasons the order of the Administrator to accept the voluntary cancellation of Mirex registrations and to suspend the hearings is AFFIRMED.