**CIBA–GEIGY CORPORATION, Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 88–4361.

United States Court of Appeals, Fifth Circuit.

June 2, 1989.

---

8. *Charlton L. Davis*, 556 F.2d at 309.

9. *Mason v. Utley*, 259 F.2d 484, 485 (9th Cir. 1958); *see also* 6 Moore's Federal Practice ¶ 55.05[3], p. 55–27.

Kenneth W. Weinstein, Washington, D.C., for petitioner.

Kenneth D. Morris, Wilmington, Del., for amicus curia.

Haynes L. Harkey, Jr., Hayes, Harkey, Smith, Cascio & Mullens, for amicus curiae.

Marilyn Perry Jacobsen, Andrew G. Gordon, Lee M. Thomas, Adm'r, E.P.A., Washington, D.C., for U.S. E.P.A.

Before RUBIN, KING and GARWOOD, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The issue is whether the Administrator of the United States Environmental Protection Agency (EPA) misapplied § 6(b) of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136d(b), in cancelling the registration of the pesticide diazinon for use on golf courses and sod farms on the ground that it "generally causes unreasonable adverse effects on the environment." Ciba–Geigy Corporation, a manufacturer of diazinon, seeks to have this court set aside the Administrator's order, contending that the Administrator failed to give effect to the statutory term "generally." Because FIFRA defines "adverse effects on the environment" to include not merely actual harmful consequences but "any unreasonable risk," we hold that the statute does not require the Administrator to find that diazinon kills birds more often than not in order to ban its use. Because, however, the Administrator improperly gave no effect to the word "generally," we grant Ciba–Geigy's petition in part and remand this case to the Administrator for application of the correct legal standard.

I.

The EPA issued a Notice of Intent to cancel the registrations of pesticide products containing diazinon for use on golf courses and sod farms because of concern about the effects of diazinon on birds. After extensive public hearings, the EPA's Chief Administrative Law Judge concluded that diazinon should be classified for "restricted use" by licensed applicators only and that its label should be amended, but that its registration for use on golf courses and sod farms should not be cancelled. The EPA staff appealed to the Administrator, who, after a careful analysis of the

record, ordered diazinon banned from use on golf courses and sod farms. The Administrator accepted many of the Administrative Law Judge's findings and conclusions, but rejected his balancing of the risks and benefits of diazinon use. The Administrator also specifically rejected Ciba–Geigy's argument, made before the Administrative Law Judge but abandoned on appeal, that because FIFRA § 6(b) authorizes cancellation of the registration of products that "generally cause[ ] unreasonable adverse effects on the environment,"[1] cancellation is justified only if a product causes unreasonable adverse effects most of the time it is used. The Administrator stated:

> FIFRA § 6(b) requires compliance with all other provisions of the statute, including FIFRA § 3(c)(5)(C) which prohibits unreasonable adverse effects on the environment without regard to whether such effects are caused 'generally.' Moreover, Ciba–Geigy's reading of the word 'generally' as meaning 'most of the time' is unnatural. In light of the basic statutory standard in FIFRA § 2(bb), which requires consideration of a broad range of factors, 'generally' is more appropriately read as meaning 'with regard to an overall picture'.... It is simply untenable to suggest that FIFRA requires continued registration where a pesticide causes unreasonable adverse effects in less than 51 percent of the cases in which it is used.

In the Administrator's view, FIFRA authorizes him to cancel registration of a pesticide whenever he finds that it causes any unreasonable risk, irrespective of the frequency with which that risk occurs.

Urging that FIFRA requires the EPA to conclude that diazinon "generally" causes unreasonable adverse effects to birds before it can cancel its registration, Ciba–Geigy petitions this court to set aside the Administrator's order.

### II.

The Administrative Law Judge concluded that bird kills due to diazinon may be an "unusual occurrence." Ciba–Geigy asserts, therefore, that even if diazinon sometimes causes adverse environmental effects, it does not do so "generally" as the statute requires.

■ Ciba–Geigy's argument focuses on a single word in the statutory phrase, ignoring the meaning of the phrase as a whole. FIFRA provides that the Administrator may cancel the registration of a pesticide if it appears to him that, "when used in accordance with widespread and commonly recognized practice, [it] generally causes unreasonable adverse effects on the environment."[2] The statute defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the ... costs and benefits."[3]

Neither the statute nor its legislative history explains the word "generally," but, as the numerous dictionary definitions that the parties have quoted to us make clear, it means "usually," "commonly," or "with considerable frequency," though not necessarily "more likely than not." Interpreting the statutory standard as a whole, therefore, the Administrator may cancel a registration if it appears to him that the pesticide commonly causes unreasonable risks.

Because FIFRA defines "adverse effects" as "unreasonable risks," the Administrator need not find that use of a pesticide commonly causes undesirable consequences, but only that it commonly creates a significant probability that such consequences may occur. FIFRA therefore does not oblige the Administrator to maintain the registration of a pesticide that might not generally have adverse effects but, say, killed children on 30% of the occasions on which it was used. A 30% risk that children might be killed is plainly an "unreasonable risk" more than sufficient to justify cancellation of the noxious pesticide.[4] Similarly, a significant risk of bird kills, even if birds are actually killed infre-

**1.** 7 U.S.C. § 136d(b).

**2.** 7 U.S.C. § 136d(b).

**3.** 7 U.S.C. § 136(bb).

**4.** *See id.*

quently, may justify the Administrator's decision to ban or restrict diazinon use.

■ Nevertheless, the Administrator improperly read the word "generally" out of FIFRA § 6(b). The word is not superfluous: it requires the Administrator to determine that the use of a pesticide in a particular application creates unreasonable risks, though not necessarily actual adverse consequences, with considerable frequency, and thus requires the Administrator to consider whether he has defined the application he intends to prohibit sufficiently narrowly. If the use of diazinon creates an unreasonable risk of killing birds on only 10% of the golf courses on which it is used, for example, the Administrator should define the class of golf courses on which its use is to be prohibited more narrowly. Without attempting to interpret the vast administrative record ourselves, therefore, we grant Ciba–Geigy's petition to the extent of remanding this case to the Administrator for application of the correct legal standard.

### III.

■ Ciba–Geigy raises two further objections. First, it asserts that substantial evidence does not support the Administrator's conclusions that diazinon has insignificant benefits or substantial environmental costs, or that its costs outweigh its benefits. Because we remand this case to the Administrator, we need not determine whether Ciba–Geigy's objection is valid. Second, Ciba–Geigy asserts that the Administrator cannot find that the risk of adverse effects of diazinon on birds is unreasonable unless use of the chemical not only kills birds but also endangers their overall population. "[S]cientists within government and in academia are in agreement," Ciba–Geigy asserts, "that an effect on wildlife is ecologically significant only if it endangers the ability of a species' population to maintain itself." This argument must be rejected for two reasons. FIFRA gives the Administrator sufficient discretion to determine that recurring bird kills, even if they do not significantly reduce bird population, are themselves an unreasonable

environmental effect. Also, even if the Administrator were required to consider the effects of diazinon on bird population alone, he would be required to find only a risk to that population, not an actual reduction in it.

### IV.

For the foregoing reasons, the order cancelling the registration of diazinon for use on golf courses and sod farms is set aside, and the case is REMANDED to the Administrator for further proceedings consistent with this opinion.