84 F.3d 1452
 318 U.S.App.D.C. 78
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
NATIONAL GRAIN SORGHUM PRODUCERS ASSOCIATION, INC., Petitioner,
v.
ENVIRONMENTAL PROTECTION AGENCY, Respondent,
National Coalition Against Misuse of Pesticides, et al., Intervenors.
 No. 95-1244.
 United States Court of Appeals, District of Columbia Circuit.
 April 22, 1996.
Rehearing and Suggestion for Rehearing In Banc Denied June 27, 1996.
 
 Before: SENTELLE, RANDOLPH and ROGERS, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 Petitioners seek review of a decision of the Environmental Protection Agency. The matter was briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 36(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED and ADJUDGED by the Court that the petition for review of the EPA decision is denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely filed petition for rehearing. See D.C.Cir.Rule 41(a).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 The National Grain Sorghum Producers Association, Inc. (NGSPA), seeks review of an EPA decision to deny reinstatement of certain uses of a pesticide which had been the subject of a settlement agreement between EPA and the pesticide manufacturer providing for a near-total phaseout of the pesticide's domestic use. Because we find substantial evidence in the record considered as a whole supporting the EPA's decision to enter into the agreement, we deny the petition for review.
 
 I. Statutory and Regulatory Background
 
 5
 The Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136-136y, provides in § 136a(a) that no one may sell any pesticide unless that pesticide is properly registered with the Environmental Protection Agency (EPA). To register a pesticide, an applicant must show that the pesticide functions without causing "unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(C). Granular Carbofuran (GCarb), manufactured by FMC Corporation under the trade name Furadan and first registered in 1969, is a pesticide used principally by corn and sorghum farmers to fight chinch bugs, wireworms, greenbugs, aphids and southern corn rootworm. GCarb was first registered in 1969. A registrant may voluntarily cancel a registration at any time, 7 U.S.C. § 136d(f)(1), or the EPA can cancel the registration if it determines that the pesticide "generally causes unreasonable adverse effects on the environment." 7 U.S.C. § 136d(b). In the case of an involuntary cancellation, the EPA may either (1) issue a notice of intent to cancel, or (2) issue a notice of intent to hold a hearing on cancellation. Id.
 
 
 6
 In 1989, the EPA published a Preliminary Determination to end all use of GCarb because of studies indicating that the pesticide is responsible for an unacceptably high level of bird kills. See Preliminary Determination to Cancel Registrations of Carbofuran Products, Availability of Technical Support Document and Draft Notice of Intent to Cancel, 54 Fed.Reg. 3,744 (1989). Before it issued a Final Determination, FMC, the sole registrant of GCarb, entered into a settlement agreement with the agency in 1991. See Granular Carbofuran; Conclusion of Special Review, 56 Fed.Reg. 64,621, 64,622 (1991). The agreement provided for a phase-out of most GCarb use in four years, and for a cap on GCarb sales at 2,500 pounds per year beginning September 1, 1994. Id. at 64,623. The EPA described the agreement in its Final Determination and also explained its scientific findings, concluding that GCarb poses an unacceptably high risk to several bird species. Id. at 64,62 2. However, because FMC had agreed to end most domestic uses of GCarb, the EPA determined that it would not need to issue a notice of intent to cancel. Id.
 
 
 7
 FMC requested a reinstatement of Gcarb use on corn and sorghum, but the EPA proposed to deny this request. Granular Carbofuran; Proposed Decision to Deny FMC Corp's Request for Reinstatement of the Corn and Sorghum Uses; Proposed Decision to Grant an Extension of the Phase-Out Period for Use on Rice; Call for Reduced Risk Alternatives to Control Rice Water Weevil, 59 Fed.Reg. 17,530, 17,532 (1994). NGSPA and other parties submitted comments opposing the EPA's proposed denial and requesting a formal hearing. NGSPA maintained that there are no adequate alternatives to GCarb for many pest control problems and estimated the cost to farmers and consumers of an EPA ban on the pesticide at over $60 million a year. However, the EPA denied the hearing request and confirmed its proposed decision to deny the reinstatement request, adhering to the original provisions of the settlement agreement for uses on corn and sorghum. See Granular Carbofuran; Final Decision to Deny Reinstatement of the Corn and Sorghum Uses and to Grant Conditional Extension of Phase-Out Period for Use on Rice; Summary of Public Comment, 60 Fed.Reg. 11,090 (1995). NGSPA seeks review of that decision in this case and also argues that the EPA improperly denied its request for a formal hearing on the cancellation of GCarb's registration.
 
 II. Legal Analysis
 
 8
 A. The EPA's Procedural Challenges to NGSPA's Claim
 
 
 9
 As a preliminary matter, the EPA raises several questions about NGSPA's constitutional and prudential standing to challenge its decision. Because NGSPA is challenging not the voluntary pesticide cancellation agreement but the EPA's decision to deny FMC's request to reinstate specified uses of GCarb, we conclude that NGSPA meets the constitutional standing requirements of causation and redressability set forth in Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). NGSPA also meets the prudential standing requirements set forth in National Recycling Coalition, Inc. v. Browner, 984 F.2d 1243, 1248 (D.C.Cir.1993), because NGSPA falls within the "zone of interests" of FIFRA § 6, 7 U.S.S. § 136d, which provides non-registrants with some, limited rights. McGill v. EPA, 593 F.2d 631, 635-36 (5th Cir.1979).
 
 
 10
 The EPA also argues that we lack jurisdiction to consider NGSPA's challenge because FIFRA requires that this case be brought in the District Court. FIFRA provides for two types of judicial review:
 
 
 11
 (a) District court review.--Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing ... [is] judicially reviewable by the district courts of the United States.
 
 
 12
 (b) Review by court of appeals.--In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the [appropriate] United States court of appeals.
 
 
 13
 7 U.S.C. § 136n (emphasis added). The EPA contends that because there was no formal hearing in this case, NGSPA must bring its challenge in the District Court. However, in Humane Society of United States v. E.P.A., 790 F.2d 106, 110-11 (D.C.Cir.1986), we rejected such a strict reading of the "public hearing" requirement for appellate court jurisdiction. Noting in Humane Society that we were not writing on a clean slate, and that we had previously determined that Congress had grounded our jurisdiction on a public hearing requirement out of concern that there be "an adequate record for review in a court of appeals," id. at 111, we concluded that "the crucial inquiry is whether such a record is available." Id. We hold in the instant case, as we did in Humane Society, see id. at 112, that the administrative record is sufficient to allow us to review the EPA's decision.
 
 
 14
 The National Coalition Against Misuse of Pesticides (NCAMP), intervenors in this case, raise a procedural issue arguing that NGSPA has violated Fed.R.App.P. 28(a)(4) in several instances in its brief by failing to support various alleged "facts" with citations to the record. To the extent these claims have merit, we find it unnecessary to rely on any facts unsupported in the record in making our decision. It is therefore unnecessary for us to further address NCAMP's claim.
 
 B. The Merits of NGSPA's Challenges
 
 15
 To justify canceling GCarb's registration, the EPA must show that the pesticide, "when used in accordance with widespread and commonly recognized practice, generally causes unreasonable adverse effects on the environment." 7 U.S.C. § 136d(b). NGSPA argues that the EPA has failed to meet this standard for GCarb as it is used on sorghum. Accordingly, it maintains that the EPA should have amended the settlement agreement with FMC to allow continued use of GCarb on sorghum.
 
 
 16
 NGSPA argues that, while the EPA may have demonstrated through studies examined in the record that GCarb causes bird deaths in corn and rice fields, it has not sufficiently justified its inference that GCarb also kills birds in sorghum fields. NGSPA posits several important differences between sorghum fields and other crop fields, contending that these differences make the EPA's inference improper. NGSPA also attacks the scientific methodology underlying the studies upon which the EPA did rely and the techniques used by the EPA in interpreting those studies. As the EPA points out, however, it need not show that GCarb actually causes an unreasonable number of bird deaths in any type of crop fields. Instead, it merely needs to show that GCarb "creates a significant probability that such consequences may occur." Ciba-Geigy Corp. v. E.P.A., 874 F.2d 277, 279 (5th Cir.1989). FIFRA § 136n(b) provides that any EPA order following a public hearing "shall be sustained if it is supported by substantial evidence when considered on the record as a whole." We find sufficient support in the record considered as a whole for the EPA's determination that the danger to birds from GCarb use in sorghum fields is significant enough to justify cancellation.
 
 
 17
 NGSPA also argues that the EPA was required to grant its request for a formal hearing. FIFRA provides that "a person adversely affected" by an EPA notice of intent to cancel a pesticide registration may request a formal hearing on the issue. See 7 U.S.C. § 136d(b). However, the EPA never issued a notice of intent to cancel GCarb's registration. Instead, the cancellation was brought about by a settlement agreement entered into by the EPA and FMC. As the EPA points out, NGSPA might gain a right to a formal hearing if it attempted to register GCarb itself. But short of such an attempt, NGSPA has no right to a formal hearing.
 
 III. Conclusion
 
 18
 Because we conclude that the agency has supported with substantial evidence its decision to enter into the settlement agreement with NGSPA and that the EPA was not required to conduct a formal hearing at NGSPA's request, we deny NGSPA's petition for review.