## STATE OF LOUISIANA
### v.
### Russell E. TRAIN, Administrator, United States Environmental Protection Agency.

Civ. A. No. 75–0364.

United States District Court,
W. D. Louisiana,
Shreveport Division.

April 21, 1975.

William J. Guste, Jr., Atty. Gen. of La., Baton Rouge, La., A. Mills McCawley, Asst. Atty. Gen., Shreveport, La., Robert L. Ackerly and Charles A. O'Connor III, Sp. Asst. Attys. Gen., Washington, D. C., for plaintiff; William J. Wellman, Sellers, Conner & Cuneo, Washington, D. C., of counsel.

Donald E. Walter, U. S. Atty., Shreveport, La., for defendant.

STAGG, District Judge.

### RULING

This is an action for a declaratory judgment and injunctive relief from the refusal of the Administrator, Environmental Protection Agency (EPA), to grant an emergency exemption to the State of Louisiana from the requirements of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. §§ 136–136y, pursuant to 7 U.S.C. § 136p and the regulations issued thereunder, 40 C.F.R. Part 166.

The emergency giving rise to the request for exemption is the potential outbreak of tobacco budworm affecting the 1975 cotton crop. The Court takes judicial notice that in this cotton producing area there is a keen public awareness of the threat of very serious economic losses in the major agricultural crop. Should the 1975 cotton crop suffer a renewed or increased outbreak of tobacco budworm, the State of Louisiana's cotton agri-business community faces an extreme emergency. The added presence of other detrimental economic conditions affecting agriculture tends to emphasize the predicament plaintiff sets forth in the complaint.

The Court also takes judicial notice of the keen public awareness of the need for environmental protection from a number of troublesome sources, whether it be pesticides, manufacturing wastes, noisy aircraft or air pollutants. Hopefully there is a "middle ground" for the balancing of the competing interests.

The requested exemption would permit cotton farmers in Louisiana to use DDT, the use of which had previously been suspended by the Administrator of the EPA, in order to combat the anticipated outbreak. Louisiana's exemption proposal is well-girded with safeguards against potential environmental harm.[1]

Counsel for the defendant, shortly after being served with plaintiff's complaint, appeared before this Court with plaintiff's counsel and made certain inquiries concerning the Court's jurisdiction over the subject matter of this action, the propriety of the instant venue and plaintiff's standing to bring this action. Pursuant to this conference, the Court set a hearing on these issues for April 17, 1975.

At the April 17 hearing and in briefs filed prior to the hearing, the parties chose to limit their argument to whether or not this Court possessed subject matter jurisdiction over the action in light of the provisions of 7 U.S.C. § 136n(b).[2] That section of FIFRA provides:

"(b) Review by court of appeals.— In the case of actual controversy as to the validity of any order issued by the Administrator *following a public hearing,* any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business, within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part. * * *" (Emphasis added.)

### FACTS

As the Administrator of the Environmental Protection Agency, defendant is authorized to grant exemptions to federal and state agencies from the requirements of FIFRA in an emergency. Title 7, Section 136p of the United States Code provides:

"The Administrator may, at his discretion, exempt any Federal or State agency from any provision of this subchapter if he determines that emergency conditions exist which require such exemption."

Extensive regulations have been published establishing when and by what procedure exemptions are to be granted.

---

1. Laboratory analyses would be required to determine dangerous levels of infestation; permits would be issued through the County Agent on a field-by-field basis after examination by a licensed pesticide consultant; no DDT mixture would be used within one-half mile of dairy forage crops or dairies or commercial feed crops; aerial application would not be allowed in winds in excess of 5 m. p. h., and ground application would be prohibited if winds were in excess of 10 m. p. h.; no more than one to 1.4 million pounds would be expected to be used; DDT would be used only during August and September, 1975.

2. As a result, this Court concludes that counsel for defendant waived his objections as to the venue of this action and as to the standing of the State of Louisiana to file this suit on behalf of its citizens.

These regulations are contained in 40 C.F.R. Part 166.

On January 15, 1975 the State of Louisiana submitted an application for an exemption in conformity with the pertinent regulations. On February 10, 1975 the EPA published notice of this application for exemption along with the notice that public hearings would be held concerning the application. 40 Fed.Reg. 6228.[3]

The hearing before a seven-man panel of EPA administrative and technical experts was conducted over a five-day period beginning on February 27 in Baton Rouge, Louisiana, and ending on March 3 in Washington, D. C. Testimony of 93 witnesses was received, and, according to the Administrator's Supplemental Order of April 1, 1975, over 1,180 pages of transcript and over 1,080 pages of exhibits were produced as a result of the public hearing.

On March 14, 1975 the Administrator reached the conclusion that no new evidence had been presented which could materially affect the original ban on DDT and, as a result, no reasons existed for granting an exemption to the State of Louisiana pursuant to 7 U.S.C. § 136p. By his order of April 1, 1975 the Administrator reaffirmed his order of March 14, 1975.

### ISSUES

The principal issue to be resolved can be stated simply: Was the Administrator's order refusing to allow the exemption from the previous ban on DDT issued following a public hearing? Counsel for plaintiff contends that a public hearing contemplated by Section 136n(b) was not held by the Administrator while counsel for the defendants asserts that such a hearing was held.

A subsidiary issue concerns what effect, if any, is to be given to the Administrator's new Rules of Practice by which he attempted to alter the substantive burden which rested on the State of Louisiana in establishing its need for an exemption from the previous ban on DDT use.

### I.

### WHAT TYPE OF PUBLIC HEARING IS CONTEMPLATED BY 7 U.S.C. 136n(b)?

In its April 14, 1975 letter directed to counsel for all parties, this Court requested:

"In the jurisdiction and venue hearing to be held on Thursday, April 17, 1975 please be prepared to argue and file a supporting memorandum addressed to the following language from 7 U.S.C. 136n(b):

'Review by court of appeals.—In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business, within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part. * * *'

"1.(a) Was the Administrator's order issued 'following a public hearing' within the meaning of the above-quoted statute?

"1.(b) Does the presentation of 93 witnesses, 1180 pages of transcript and 1080 pages of exhibits over a period of five days constitute the type of 'public hearing' intended by Congress to trigger review by the Court of Appeals?

"2. Does the use of the term 'informal public hearing' require a dif-

---

**3.** Although in its brief, plaintiff refers to the public hearing as an "informal" hearing, a reading of the notice published in the Federal Register discloses no such language but merely stated that a "public hearing" on the application would be held. See Exhibit "A" attached hereto.

ferent interpretation than 'formal public hearing' or 'adjudicatory hearing'?

OR

"3. Is this case controlled by the language of 7 U.S.C. 136n(a) or (c)?"

In its response to the Court's letter, plaintiff succinctly stated its position on page 2 of its Memorandum on Jurisdiction:

> "By limiting language of Section 16(b)," (7 U.S.C. § 136n[b]) " 'any order issued by the Administrator following a public hearing', restricts Court of Appeals review to orders based upon an adjudicatory hearing within the meaning of 5 U.S.C. § 554 and not the investigatory hearing or so-called 'informal public hearing' that the Administrator ordered in the case of the Louisiana petition for emergency relief."

Defendant contends that the term "public hearing" used in Section 136n(b) encompasses both formal and informal public hearings and that since an informal public hearing was held on Louisiana's application, this Court lacks subject matter jurisdiction over the present controversy.

This Court cannot agree with the plaintiff's argument that the public hearing within the meaning of Section 136n(b) of FIFRA is *an adjudicatory hearing* as defined by the Administrative Procedure Act, 5 U.S.C. §§ 551(6) and (7) and 554.

## A. STATUTORY INTERPRETATION

It is the opinion of this Court that the provisions of FIFRA contemplate both formal and informal hearings, both of which are termed public hearings. Section 136d(d) of Title 7 provides for a formal public hearing along with scientific review for cases of *cancellation, suspension* or *refusal to register* a pesticide. Such a hearing would have to be adjudicative in nature and in conformity

with 5 U.S.C. § 554. However, the present proceeding is not of this nature.

■ The regulations by which the Administrator is to consider requests for *exemptions* pursuant to FIFRA are found in 40 C.F.R. Part 166. These regulations contain no provision relating to a public hearing. However, in § 136s(b) the Administrator is authorized to solicit the views of interested persons orally concerning actions taken under the Act, i. e., the Administrator is authorized to hold informal hearings which are not adjudicative in nature on petitions for exemptions. This type of hearing is also referred to as "a public hearing" in Section 136s(b) and (c). Thus, the term "public hearing", as used in Section 136n(b), obviously encompasses both formal and informal public hearings held under the Act, and this Court concludes that Congress so intended. To find otherwise would be effectively to prohibit judicial review of an Administrator's decision concerning an application for exemption under Section 136p of FIFRA. As a reading of the Act discloses, the provisions of FIFRA vest jurisdiction in the district courts only for: (1) review of agency refusals to cancel or suspend registrations or change classifications; (2) to review other agency action not committed to agency discretion; or (3) to enforce, or prevent and restrain violations of the Act. As will be discussed later, none of these provisions are applicable in this case.

## B. LEGISLATIVE INTENT

In Senate Report No. 92–838, 92nd Congress, 2nd Session U.S.Code Cong. & Admin.News, 1972, pp. 3993, 4019, 4070 (1972), the following excerpts are found:

> "The Committee has simplified the procedures for judicial review of agency actions by providing that all actions taken after a hearing shall be reviewed by the courts of appeals and all actions taken without a hearing, unless otherwise provided in the Act, shall be reviewable in district courts.

"In short, the Committee on Agriculture and Forestry believes that matters which have not been heard before should go to courts of original jurisdiction and appeals from cases which have already been administratively heard and decided should go to appellate courts. The question is really that simple."

In Senate Report No. 92–970, 92nd Congress, 2nd Session, U.S.Code Cong. & Admin.News, 1972, pp. 4092, 4112 (1972), there appears the following language from the Commerce Committee:

"The amendment further provides for a court of appeals review of (1) all suspension orders, cancellation orders and orders to change classification, (2) refusals of EPA to cancel, suspend, or change classification and (3) any order following a public hearing.

"The Agriculture Committee bill provides for review of decisions concerning suspension, cancellation, or change in classification in the courts of appeals if a hearing has been held and in the district courts if a hearing has not been held. The existing FIFRA provides for review of all orders in the courts of appeals. It is intended to continue this practice under the proposed amendment.

"While the Environmental Protection Agency apparently now accepts the judicial review provisions of the Agriculture Committee bill, on April 17, 1972, the following submission by EPA to Senator Allen, Chairman of the Subcommittee on Agricultural Research and General Legislation, made several comments in support of review in the courts of appeals:

'We favor all review in the courts of appeals because district court proceedings are time-consuming. District court review, moreover, tends to create some confusion. Instead of coping with legal constructions reached by eleven circuits, and speedily resolved in the Supreme Court, we must administer a statute under the supervision of some one-hundred district courts. It is inevitable that the courts, in reviewing decisions to suspend or orders refusing not to cancel or suspend, will flesh out the substantive standards of the Act. Indeed, a district court in finding a refusal to cancel is arbitrary will announce the outer boundaries of legal criteria that the Administrator must apply at the hearing. That hearing record will then be reviewed in a circuit court, perhaps a circuit that does not supervise the district court that ordered cancellation. It would not be long before the annotated reports on this legislation are equal in length and complexity to those following the ICC's legislation.'

"As stated in the Agriculture Committee report, one of the prime reasons for providing judicial review in the district courts for those decisions not following a public hearing is that an adequate record would not exist for circuit court review. The April 17 letter to Senator Allen from EPA contains an explanation of how the circuit courts would obtain an adequate record for review even though a public hearing had not been held.

'The last point of our amendment is to return to the courts of appeals the task of reviewing those decisions not to cancel taken because the Administrator finds that there is *no* new substantial questions of safety. The decision not to cancel is taken based on a compiled documentary record which includes the registration file, scientific documents which are exhibits and a published order with findings. Written petitions and comments are made part of a formal docket. This is, we believe, a sufficient record for review by a circuit court.'

"While the comments of the Environmental Protection Agency deal

with refusals to cancel, their rationale with respect to all questions of suspension, cancellation or changes in classification not following a hearing should apply. The amendment of the Committee on Commerce explicitly provides that the documentation in support of the Administrator's decision be filed with the court when judicial review of that decision is sought.

"While an appellate court review of administrative orders obviously should not be provided for in all statutes, it is felt that past experience under FIFRA and the reasons cited by EPA above strongly justify such a provision here."

The foregoing passages from the Senate committees solidify the Court's conclusion that the appropriate court to review the Administrator's order refusing to allow to Louisiana the requested exemption is the Court of Appeals. Moreover, there exists a rather extensive record upon which the Court of Appeals can review the Administrator's decision. As alluded to previously, the hearing on the application for exemption resulted in 1,180 pages of transcript and over 1,080 pages of exhibits.

To hold otherwise would require this Court to ignore the plain language of Congress in using the words "following a public hearing". Congress did not specify "a formal public hearing" or "an adjudicatory hearing as defined in the Administrative Procedure Act" or "an informal public hearing". This Court did not find any evidence of legislative intent, nor was any suggested by counsel, where Congress specified anything other than "following a public hearing" appeal would be to the Court of Appeals.

## C. DISTRICT COURT REVIEW UNDER FIFRA

Section 136n of Title 7 specifies, in some detail, the manner in which administrative decisions under FIFRA are to be judicially reviewed. Judicial review in the district court is provided for

" * * * Agency refusals to cancel or suspend registrations or change classifications *not following a hearing* and other final Agency actions *not committed to Agency discretion by law.*" 7 U.S.C. § 136n(a). (Emphasis added.)

The Administrator's ruling denying Louisiana's application for an exemption was not an "agency refusal[s] to cancel or suspend registrations or change classifications." This is evident from the nature of Louisiana's petition—it was for an exemption under 7 U.S.C. § 136p, not for a cancellation, suspension or change of classifications pursuant to Section 136d. Moreover, as noted above, a hearing was held prior to the Administrator's decision, which also eliminates district court review under the first portion of Section 136n(a).

The second portion of Section 136n(a) is likewise inapplicable. That portion affords review in the district court for "other final Agency actions not committed to Agency discretion by law." That the Administrator's decision to grant or disallow the exemption was a discretionary function cannot be gainsaid. Section 136p expressly provides that the Administrator " * * * *may, at his discretion* * * * *"*, exempt any Federal or State agency from the provisions of this subchapter.

Finally, subsection (c) of Section 136n provides for district court jurisdiction to enforce the provisions of FIFRA or to prevent and restrain violations of the subchapter. Such actions are to be taken only by the agency. This is not a proceeding to enforce, or prevent and restrain violations of this subchapter, therefore Section 136n(c) is not applicable.

Having determined that district court review under FIFRA is not provided for in the case *sub judice,* this Court is led to the conclusion that exclusive jurisdiction over this matter is vested in the Court of Appeals under 7 U.S.C. § 136n(b) and that a public hearing within the meaning of that section was held.

## II.

### THE SUBSIDIARY ISSUE

■ A subsidiary issue raised by the State of Louisiana involves the Administrator's rule change after the filing of Louisiana's application for exemption. (See Memorandum in Support of Plaintiff's Motion for Preliminary Injunction, p. 27, et seq.) The state contends that under the rules extant at the time the state filed for an exemption, its burden of proof differed substantially from its burden after the rule change. Under the regulations promulgated by the Administrator and prevailing at the time Louisiana filed for an exemption, Louisiana had to prove the following in order to qualify for an exemption:

"(a) a pest outbreak has or is about to occur and no pesticide registered for the particular use or alternative method of control is available to eradicate or control the pest;

"(b) significant economic or health problems will occur without the use of the pesticide; and

"(c) the time available from discovery or prediction of the pest outbreak is insufficient for a pesticide to be registered for the particular use . . ." 40 C.F.R. § 166.1

The Administrator, the state contends, altered the burden by his publication of new Rules of Practice to govern Louisiana's application. The Administrator ruled that rather than considering Louisiana's petition as one for emergency relief under Section 18 of FIFRA (7 U.S. C. 136p), he would review it as a request for reconsideration of the original 1972 DDT cancellation. See 40 C.F.R. § 164.-30 et seq. publ. 40 Fed.Reg. 12261

(March 18, 1975). The state argues that this change is contrary to the Administrative Procedure Act which mandates a 30-day period for written comment prior to the implementation of a rule change. 5 U.S.C. § 553. The state argues further that the change in the rules established a "new substantive test" and was not an excepted change allowed by 5 U.S.C. § 553(b)(A) and (B). Citing Pacific Molasses Company v. F. T. C., 356 F.2d 386 (5th Cir. 1966), the state claims that the discussed change resulted in a denial of due process.[4]

Whether or not the Administrator's rule change was an arbitrary and unlawful act violating due process, however, must be decided by the Court of Appeals. This court cannot pass on the validity of the Administrator's action.

### CONCLUSION

For the foregoing reasons, this Court determines that it lacks subject matter jurisdiction over the present suit and must therefore dismiss. The motion to dismiss on behalf of the United States is granted.

### EXHIBIT "A"

[FRL 333–5; OPP–210004]

### LOUISIANA

Application for Emergency Exemption To Use DDT for Control of Tobacco Budworm on Cotton; Public Hearing

Pursuant to section 21 of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), as amended (86 Stat. 973), notice is hereby given that the Environmental Protection Agency (EPA) will hold public hearings February 27–28, 1975, in Baton Rouge, Louisiana, and March 3, 1975, in Washington DC, regarding the State of Louisiana's applica-

---

4. "When an administrative agency promulgates rules to govern its proceedings, these rules must be scrupulously observed. * * * For once an agency exercises its discretion and creates the procedural rules under which it desires to have its actions judged, it denies itself the right to violate these rules. * * * If an agency in its proceedings violates its rules and prejudice results, any action taken as a result of the proceedings cannot stand. * * *" Pacific Molasses Company v. F.T.C., 356 F.2d 386, 389–390 (5th Cir. 1966) (Citations omitted.)

tion for an emergency exemption pursuant to section 18 of the FIFRA to allow the use of DDT for control of tobacco budworm on cotton this year. An announcement of the receipt of this application is published elsewhere in today's FEDERAL REGISTER.

Section 18 provides that the Administrator "may, at his discretion, exempt any Federal or State agency from any provision of this Act if he determines that emergency conditions exist which require such exemption."

EPA's regulations for implementation of section 18, which were issued December 3, 1973 (38 FR 33303), provide that an emergency will be deemed to exist when:

1. A pest outbreak has occurred or is about to occur and no pesticide registered for the particular use, or alternative method of control, is available to eradicate or control the pest;

2. Significant economic or health problems will occur without the use of the pesticide; and

3. The time available from discovery or prediction of the pest outbreak is insufficient for a pesticide to be registered for the particular use.

In determining whether emergency conditions exist for the purpose of section 18, extensive balancing of risks and benefits and a determination of "no unreasonable adverse effects on the environment" are not required, as they are in other sections of FIFRA, as amended. Nevertheless, consideration of the risks and benefits is desirable when, as in this case, a significant quantity of a cancelled pesticide is proposed for use.

EPA is holding these public hearings in order to provide all interested parties an opportunity to present information relevant to the foregoing questions as they relate to Louisiana's application.

The State of Louisiana has requested a decision on the application by April 1, 1975, to allow sufficient time for planning of cotton planting and pest control activities. EPA plans to meet this requested decision date. It therefore is necessary to hold the public hearings on less than 30 days' notice. It should be noted, however, that interested parties wishing to submit written comments will have until March 12, 1975, to do so, in accordance with the notice of receipt of Louisiana's request also published in today's FEDERAL REGISTER.

All individuals and organizations wishing to testify at the hearing in Baton Rouge should notify Dr. Norman Dyer, Pesticides Branch, EPA, 1600 Patterson Street, Dallas TX 75201. Dr. Dyer's telephone number is 214/749-1121. Notification concerning participation in the Washington, D. C. hearing should be given to the Federal Register Section (Attn.: Mrs. Radinsky), Technical Services Division, Office of Pesticide Programs, Rm. E-421, 401 M Street, SW, Washington, D. C. 20460. Mrs. Radinsky's telephone number is 202/755-8060.

EPA reserves the right to schedule testimony in such a manner as to ensure that sufficient time is allowed for orderly presentation of all substantive information and for appropriate questioning of persons presenting such information.

The hearing in Baton Rouge will be held in the Conservation Hearing Room, Natural Resource Building, 625 North 4th Street, beginning each day at 9 a. m.

The hearing in Washington, D. C., will be held in Room 305, Waterside Mall (EPA Headquarters), 4th and M Streets, SW, beginning at 9 a. m.

Dated: February 7, 1975.