653 F.2d 1260
 15 ERC 1467, 11 Envtl. L. Rep. 20,104
 AMVAC CHEMICAL CORPORATION, Petitioner,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent.
AMVAC CHEMICAL CORPORATION, Appellee,
v.
Douglas M. COSTLE, Administrator, United States
Environmental Protection Agency, Appellant.
 Nos. 79-7270, 80-5102.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 5, 1980.
Decided Dec. 1, 1980.
As Amended Feb. 5, 1981.
Rehearings Denied April 10, 1981.
 
 Lawrence D. Lewis, Musick, Peeler & Garrett, Los Angeles, Cal., for petitioner.
 
 
 1
 Nancy Long, Land & Natural Resources Division, Washington, D.C., for United States.
 
 
 2
 Appeal from the United States District Court for the Central District of California.
 
 
 3
 Before GOODWIN and FERGUSON, Circuit Judges, and PRICE*, District Judge.
 
 PRICE, District Judge:
 
 4
 These multiple proceedings involve the same factual background. The pesticide dibromochloropropane (DBCP) is used to control nematodes, a soil dwelling, microscopic parasite that feeds on plant root structures. The Petitioner and Appellee, Amvac Chemical Corporation (AMVAC), has been and continues to be a registrant and manufacturer of the pesticide. DBCP is a pesticide that must be registered under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136, et seq., in order to be available for use in the United States. The Respondent and Appellant, Environmental Protection Agency (EPA) administers FIFRA, and has authority to proscribe regulations, and carry out the provisions of the statutes and regulations promulgated pursuant thereto.
 
 
 5
 Commencing in the summer of 1977, the EPA initiated an inquiry into all pesticide products concerning DBCP. These proceedings resulted in the following agency actions:
 
 
 6
 1. Notice of Intent to Suspend and Conditionally Suspend Registration of Pesticide products Containing Dibromochloropropane, dated September 8, 1977 (42 Federal Register 48915, September 26, 1977).
 
 
 7
 2. Notice of Rebuttable Presumption Against Registration and Continued Registration of Pesticide Products Containing Dibromochloropropane, dated September 15, 1977 (42 Federal Register 48026, September 22, 1977).
 
 
 8
 3. Suspension Order unconditionally suspending the use of DBCP products on 19 food crops, and conditionally suspending the registered use of DBCP on all other crops pending required changes in labels and classification, dated September 27, 1977 (42 Federal Register 57543, November 3, 1977).
 
 
 9
 4. Notice of Intent to Cancel the Registration or Change the Classification of Pesticide Products Containing Dibromochloropropane and Statement of Reasons, dated October 27, 1977 (42 Federal Register 57544, November 3, 1977).
 
 
 10
 None of the foregoing actions were preceded by any type of public or private hearing; in the September 15, 1977, Notice of Rebuttable Presumption, EPA invited registrants and other interested parties to submit information concerning the pesticide to the agency.
 
 
 11
 On September 6, 1978, the EPA issued an Amended Notice of Intent to Cancel the Registration of Pesticide Products Containing Dibromochloropropane and Statement of Reasons. This Amended Notice proposed the unconditional cancellation of the registered uses of this chemical on twenty-three (23) specified food crops. This action by EPA, which again was not preceded by either public or private hearing, was issued pursuant to 7 U.S.C. § 136d(b) (Section 6(b) of FIFRA). It is this portion of the statutory scheme, of course, which entitles AMVAC, as well as other registrants and interested persons, to request a hearing to contest the proposed agency action.
 
 
 12
 AMVAC timely filed a request for hearing, a statement of objection in order to preserve its right to contest the proposed unconditional cancellation of the registered uses of DBCP.[1] Because of the alleged ambiguity in AMVAC's request for hearing, the EPA determined that AMVAC's request for hearing was only effective as to one crop, namely tomatoes.[2] When AMVAC attempted to amend its request for hearing to cover the 22 other crops mentioned in the EPA's amended notice of September 6, 1978, the Administrative Law Judge refused AMVAC leave to amend to encompass the other crops. The decision of the Administrative Law Judge was upheld in an accelerated decision by EPA.[3]
 
 
 13
 Because of its uncertainty as to appropriate review procedures as prescribed by statute, AMVAC proceeded as follows:
 
 
 14
 1. It filed a petition for review in this court,[4] and
 
 
 15
 2. A petition for review in the District Court for the Central District of California.[5]
 
 
 16
 EPA's response to the District Court action was a Motion to Dismiss. That motion being denied, EPA sought, and was granted, an Order certifying the District Court's decision for an interlocutory appeal.
 
 
 17
 Thereafter, both matters were ordered consolidated for a joint hearing in these proceedings.[6]
 
 
 18
 We only decide the appeal from the District Court order denying EPA's motion to dismiss. For the reasons stated below, we determine that the agency action cancelling the registration of the use of DBCP is not yet ripe for review.
 
 
 19
 7 U.S.C. § 136n(a) and (b), provide, in pertinent part, as follows:
 
 
 20
 "(a) District court review. Except as otherwise provided in this act (7 U.S.C. §§ 136, et seq.), Agency refusals to cancel or suspend registrations or change classifications not following a hearing and other final Agency actions not committed to Agency discretion by law are judicially reviewable in the district courts.
 
 
 21
 "(b) Review by court of appeals. In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in United States court of appeals for the circuit wherein such person resides or has a place of business within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Administrator or any officer designated by him for that purpose, and thereupon the Administrator shall file in the court the record of the proceedings on which he based his order, as provided in section 2112 of title 28, United States Code (28 U.S.C. § 2112). Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part. The court shall consider all evidence of record. The order of the Administrator shall be sustained if it is supported by substantial evidence when considered on the record as a whole. The judgment of the court affirming or setting aside, in whole or in part, any order under this section shall be final, subject to review by the Supreme Court of the United States upon certiorari or certification as provided in section 1254 of title 28 of the United States Code (28 U.S.C. § 1254). The commencement of proceedings under this section shall not, unless specifically ordered by the court to the contrary, operate as a stay of an order. The court shall advance the docket and expedite the disposition of all cases filed therein pursuant to this section."
 
 
 22
 As indicated above, AMVAC itself was uncertain as to whether primary jurisdiction lay with the District Court or in the Circuit Court to review the agency action at this stage. The agency and the Administrator, on the other hand, contend the issue is clear; that Congress clearly intended that all agency decisions that impinge upon the registration and use of insecticides are to be reviewed in the first instance by the Circuit Courts, save and except agency refusals to cancel or suspend registrations or to change classifications not following a hearing. We find it unnecessary to decide that issue; rather, we determine that the agency action in this matter was procedural in nature-more in the form of a preliminary step to determine the scope of the requested agency hearing.
 
 
 23
 It is true, as contended by the agency and the Administrator, that Congress did intend to limit review of the agency's administrative decisions issued after hearing to the Circuit Courts. Congress' purposes in adopting this technique can be enumerated as follows: (1) A desire to limit the number of conflicting decisions to the smallest possible number; (2) To obtain finality of decision as rapidly as possible.
 
 
 24
 Nowhere in the Congressional history does Congress evidence any intent to place the review of procedural disputes in the Circuit Courts, and indeed, specifically provides for review by the District Court of "other final agency actions not committed to agency discretion by law."[7]
 
 
 25
 Illustrative of the distinction we make is State of Louisiana v. Train, 392 F.Supp. 564 (W.D.La.1975). The State of Louisiana sought an emergency exemption from the EPA which would allow cotton farmers in Louisiana to use DDT to control a feared catastrophic outbreak of tobacco budworm which threatened the 1975 cotton crop in that state. Pursuant to Louisiana's application, the EPA published notice of the application for exemption and set the matter down for hearing. After an extensive hearing which produced over 1080 pages of exhibits, the Administrator reaffirmed his prior order banning DDT. The District Court concluded that the hearing in that case constituted a public hearing and therefore, 7 U.S.C. § 136n(b) was controlling, vesting exclusive jurisdiction of review of the matter in the Court of Appeals. Accordingly, the District Court granted the agency's motion to dismiss, which decision was affirmed without published opinion in 514 F.2d 1070 (5 Cir.). It should be noted that the action of the Administrator in this case was an order about which there was actual controversy as to its validity.
 
 
 26
 Further illustrative of the distinction we make here are two cases decided respectively in the United States Circuit Court for the District of Columbia, Environmental Def. F., Inc. v. Environmental Pro. Agcy., 485 F.2d 780 (D.C.1973), and Environmental Def. F., Inc. v. Blum, 458 F.Supp. 650 (D.C.1978).
 
 
 27
 In Environmental Def. F., Inc. v. Environmental Pro. Agcy., supra, the order of the administrator banning the use of the pesticide DDT caused a rash of litigation to break out all over the United States. To effectuate the purposes and intent of Congress the Circuit Court immediately took charge of all of the pending cases, and prohibited further proceedings in the District Courts. On the other hand, in Environmental Def. F., Inc. v. Blum, supra, the sole question was adherence by the agency to the statutory rules of administrative procedure, and hence, the District Court accepted jurisdiction and issued appropriate orders for the agency to proceed pursuant to the appropriate sections of the Administrative Practice Act.
 
 
 28
 Finally, Harrison v. PPG Industries, 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980), provides an illustrative parallel situation in another part of EPA's administrative domain.
 
 
 29
 There, the Supreme Court had under consideration a final order of the Administrator pertaining to performance standards of stationary apparatus affecting air pollution. Both sides conceded that the action of the Administrator was "final". The statutory scheme providing for judicial review of administrative action is found in 42 U.S.C. § 7607(b)(1).[8]
 
 
 30
 There, as here, the affected party, PPG Industries, was uncertain as to the intent of Congress and concurrently filed petitions for review in the Fifth Circuit Court of Appeals as well as a complaint for injunctive relief against the Administrator in the United States District Court for the Western District of Louisiana. Proceedings in the District Court case were stayed pending resolution of the Circuit Court case.
 
 
 31
 The Fifth Circuit dismissed petitioners petition on the grounds that it had no jurisdiction. (See PPG Industries v. Harrison, 587 F.2d 237.)
 
 
 32
 Prior to the Clean Air Act amendments of 1977, it was uniformly understood that 28 U.S.C. § 1331(a) conferred jurisdiction on the Federal District Courts to review agency action, and that section conferred jurisdiction on District Courts to review EPA action undertaken pursuant to the Clean Air Act amendments of 1970. However, in 1977, the Congress added the language contained in § 7607(b)(1), supra. The Circuit Court construed this language in a most restrictive way and indicated that the phrase "any other final action of the Administrator" referred only to those orders enumerated in the body of the section itself.
 
 
 33
 The Supreme Court granted certiorari and reversed stating that the dominant intent of Congress as determined both from the legislative history and the plain meaning of the phrase "any other final action of the Administrator" meant that jurisdiction was vested solely in the Circuit Courts by Congress.
 
 
 34
 In PPG Industries, supra, unlike the instant case, the administrative action was final; no further hearings or determinations were pending. Although the majority opinion addresses the problem of inadequate administrative records to enable the Circuit Courts to properly perform their function and the remedy available to the Circuit Courts, it should be noted there is no record before this Court, developed by agency hearings on any one of the registered uses of DBCP. That record will not be developed until the scope of the hearing is determined by the final decision on AMVAC's motion to amend.
 
 
 35
 Subsequent to oral argument in this appeal, the Court of Appeals for the District of Columbia decided Environmental Def. F., Inc. v. Costle, 631 F.2d 922. We have considered it and believe it not to be applicable to the case before us.
 
 
 36
 First, despite Judge Wilkey's statement to the contrary in Environmental Def. F., Inc. v. Costle, supra, a "hearing" did take place prior to the agency action.[9] Second, the issues presented in Environmental Def. F., Inc. v. Costle, supra, turned ultimately on statutory interpretation.
 
 
 37
 In reading the extensive materials pertaining to the legislative history of this Act, the main thrust of Congress was to have final decisions of the Administrator passed on to the Court of Appeals where there was an adequate administrative record for the Court of Appeals to review the propriety of the action. Such a record, of course, is developed by a "hearing". This is the rationale of the bifurcated judicial review provision enacted by Congress.[10]
 
 
 38
 In this case, the agency action objected to was not to hold a public hearing on any crop except tomatoes. We hold that a decision not to hold a public hearing is not an order issued following a public hearing. For review, that decision must be presented first to a district court and not originally to a circuit court.
 
 
 39
 For the foregoing reasons, we affirm the decision of the District Court for the Central District of California, and dismiss the original petition filed in this Court.
 
 GOODWIN, Circuit Judge, dissenting:
 
 40
 I respectfully dissent. The issue presented to us is whether this court or the district court has jurisdiction to hear an appeal from the denial of a request for a 6(d)[1] hearing regarding 22 crops before cancellation of registration of the pesticide. Section 16(b),[2] the jurisdictional statute in question, permits appellate review of "orders issued ... following a public hearing."
 
 
 41
 I believe the denial of a 6(d) hearing for the 22 crops was an order issued following a public hearing. The District of Columbia Circuit discussed at length the meaning of "public hearing" in § 16(b) in Environmental Defense Fund, Inc. v. Costle, 631 F.2d 922 (D.C.Cir.1980). It concluded that a public hearing has occurred if there was an administrative decision with an adequate record for appellate review. I wholeheartedly agree. The majority holding that the denial of a request for a 6(d) hearing is procedural and hence not reviewable, rather than "substantive" and reviewable finds no support in either statute or precedent. See Environmental Defense Fund at 928-930.
 
 
 42
 In this case, there was an administrative decision with an adequate record for appellate review. Both parties submitted briefs to the Administrative Law Judge ("ALJ") and some oral argument[3] was heard. The ALJ issued a nine page opinion denying the 6(d) hearing for the 22 crops. The EPA Administrator affirmed that order in a five page order. The question at this point is one of law. No further record need be created. Indeed, no further record of it can be created. The district court's review will proceed in exactly the same manner as our review would proceed.
 
 
 43
 The majority acknowledges that Congress' intent in allowing immediate appellate review was to limit the number of conflicting decisions and to afford finality as soon as possible. Because we have an adequate basis from which to review, I would decide the merits and delay consideration of this appeal no longer.
 
 
 
 *
 Honorable Edward Dean Price, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 AMVAC's request for hearing was in the form of a letter which was drafted and submitted prior to AMVAC's representation by counsel. The letter reads as follows:
 "Gentlemen:
 "The purpose of this letter is to request a hearing concerning cancelled uses of DBCP (1,2-dibromo-3-chloropropane).
 "We specifically object to cancelled uses on the crop Tomatoes. We believe sufficient data exists in favor of maintaining this crop on use labels for commercial application to process tomatoes in California (90% of the crop acerage (sic) in the U.S.) to warrant such hearing.
 "At the same time, we request that registrants whose labels do not presently permit application to all permissable (sic) crops and locations."
 
 
 [2]
 The regulations require that each chemical must be separately registered for each crop use. EPA's notice of intention to cancel the registration covered the use of the pesticide on 23 crops
 
 
 [3]
 See 40 C.F.R. 164.91 and 40 C.F.R. 164.102
 
 
 [4]
 United States Circuit Court No. 80-5102
 
 
 [5]
 AMVAC Chemical Corp. v. Douglas M. Costle, Administrator, Environmental Protection Agency, No. 79-02184-WPG
 
 
 [6]
 The consolidated appeals proceeded under No. 80-5102
 
 
 [7]
 The legislative history, specifically the report of the Senate committee of Agriculture and Forestry, reveals that the division of judicial review jurisdiction was dependent upon the committee's view that after a full hearing, a sufficient record would have been developed to enable the Circuit Court to adequately assess the legal propriety of agency action; whereas, if the agency acts without a hearing, the judicial review should be to the District Court "since there is no record for the Court of Appeals". ((1972) 3 U.S.Code Cong. & Admin.News, pp. 3993, 4066, et seq. (4070))
 Here there is no record of the agency action on the merits' the record before this court deals only with the procedural skirmishing aimed at determining the scope of the hearing, a procedure which the District Court is admirably equipped to handle.
 
 
 [8]
 The Harrison case arose under the Clean Air Act (42 U.S.C. § 7401, et seq.). That act, and the amendments thereto, mandate administrative action by the EPA Administrator in a variety of areas impinging upon air quality control. Section 7607(b)(1) of Title 42, after enumerating a series of sections which might spawn administrative action, continues: "or any other final action of the Administrator under this act (including any denial or disapproval of the Administrator under subchapter I of this chapter) which is locally or regionally applicable may be filed only in the United States Circuit Court of Appeals for the appropriate circuit." (emphasis added)
 
 
 [9]
 In the portion of the case captioned "Background" the following appears:
 "An opportunity to the interested public was extended for comment on the Administrator's preliminary determinations. Both EDF and Florida Citrus, among others, submitted written comments, and attended a public meeting held by the advisory panel."
 The court later held that while Louisiana v. Train, supra, was distinguishable, the reasoning therein was, at the very least, persuasive.
 
 
 [10]
 In reviewing the transcript on appeal, we find no record developed by the agency after a "hearing" public or otherwise on the merits of the agency action of October 27, 1978. The records which the reviewing court will have to deal with concern the procedural aspects of AMVAC's attempt to get the hearing to which they contend they are entitled
 
 
 [1]
 Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), Section 6(d), 7 U.S.C. § 136d(d)
 
 
 [2]
 7 U.S.C. § 136n(b)
 
 
 [3]
 The district court order at page 3 says AMVAC had oral argument. It seems, however, that they got to speak to the judge at a prehearing conference on the motion to amend the 6(d) hearing request. No formal argument on the motion was had