886 F.2d 1075
 30 ERC 1404, 19 Envtl. L. Rep. 21,385
 NORTHWEST FOOD PROCESSORS ASSOCIATION, a nonprofit
association; Tualatin Valley Fruit Marketing, Inc., an
Oregon corporation; American Frozen Food Institute, a
nonprofit association; James M. Love,
Plaintiffs-Appellants-Cross-Appellees,
and
Dave Frohnmayer, Attorney General for the State of Oregon,
on behalf of the People of the State of Oregon,
Plaintiff-Intervenor,
v.
William K. REILLY, Administrator, Defendant-Appellee,
David Alvarez; Alicia Prieto; Cristina Esquivel, et al.;
National Coalition Against the Misuse of Pesticides;
Northwest Coalition Against Pesticides; Natural Resources
Defense Council; United Farmworkers Union of Washington
State; Pineros y Campesinos Unidos Del Noroeste, Inc.,
Defendants-Intervenors-Appellees-Cross-Appellants.
AMERICAN FROZEN FOOD INSTITUTE, a nonprofit association, Petitioners,
v.
UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; William K.
Reilly, Administrator, Respondents.
 Nos. 88-4339, 88-4389 and 88-7216.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 9, 1989.
Order Filed March 20, 1989.
Opinion Decided Sept. 27, 1989.
 
 Susan K. Eggum, McEwen, Gisvold, Rankin & Stewart, Portland, Or., for plaintiffs-appellants-cross-appellees.
 Eileen T. McDonough, U.S. Dept. of Justice, Environmental Defense Section, Washington, D.C., for defendant-appellee.
 Victor M. Sher, Sierra Club Legal Defense Fund, Seattle, Wash., for defendants-intervenors-appellees-cross-appellants.
 Appeal from the United States District Court for the District of Oregon.
 Before SKOPIL, CANBY and THOMPSON, Circuit Judges.
 DAVID A. THOMPSON, Circuit Judge:
 
 
 1
 These three consolidated cases all involve a decision by the Environmental Protection Agency Administrator ("the Administrator") to cancel the registrations for the herbicide dinoseb. Because of the urgent circumstances, we sustained the Administrator's decision without a published opinion. See Northwest Food Processors Ass'n v. Reilly, 869 F.2d 542 (9th Cir.1989). We now explain the basis for our decision.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 In October of 1986, the Administrator issued a notice of his intent to cancel all dinoseb registrations and an emergency suspension order "prohibiting the sale, distribution and use of dinoseb pending completion of the cancellation proceedings." Love v. Thomas, 858 F.2d 1347, 1350 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1932, 104 L.Ed.2d 403 (1989). All the registrations held by registrants who did not request a cancellation hearing or who withdrew their requests were cancelled automatically. By November 1986, Cedar Chemical Corp. ("Cedar") and Drexel Chemical Co. ("Drexel") were the only registrants contesting the proposed cancellation.
 
 
 3
 During the pendency of the cancellation proceedings, several parties also involved in this case challenged the Administrator's suspension order. This court held that "the emergency suspension order was arbitrary and capricious, an abuse of discretion, and was not issued in accordance with" the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"). Love, 858 F.2d at 1363.
 
 
 4
 In March 1988, while the cancellation proceedings were still pending, Cedar and Drexel entered into a settlement agreement with the EPA providing for: (1) the cancellation of the remaining dinoseb registrations, (2) the limited use of existing stocks of dinoseb and (3) the indemnification of certain holders of dinoseb products. The Administrative Law Judge ("ALJ") granted Cedar, Drexel and EPA's motion for an accelerated decision and approved the settlement. After considering and rejecting various objections to the settlement, the Administrator affirmed the ALJ's decision.
 
 
 5
 In response to the ALJ's decision, Northwest Food Processors Association, James Love, Tualatin Valley Fruit Marketing, Inc. and the American Frozen Food Institute ("AFFI") simultaneously filed a complaint in district court and a petition for review in this court. For convenience, we refer to this group of parties as "the processors." Of the processors, only AFFI remains a party to the petition for review.
 
 
 6
 The Natural Resources Defense Council, National Coalition for Alternatives to Pesticides, United Farm Workers Union of Washington, Pineros y Campesinos Unidos Del Noroeste, Davide Alvarez, Alicia Prieto, and Christina Esquivel (collectively "NCAP") intervened in the district court action. They supported the cancellation order, but challenged the continued use of existing stocks. The processors have not appealed the district court's order allowing NCAP to intervene in the district court action. Later, NCAP filed an untimely motion to intervene in the processors' petition for review filed in this court.[1]
 
 
 7
 The district court ruled in favor of the Administrator on all counts. The processors appealed and NCAP filed a timely cross-appeal. The appeal, cross-appeal and petition for review have been consolidated for review.
 
 JURISDICTION
 
 8
 We review jurisdictional issues de novo without giving deference to the Administrator's "construction of the judicial review provisions of FIFRA." Love, 858 F.2d at 1352 n. 9. This consolidated appeal presents two jurisdictional issues. We first consider our jurisdiction to review the cancellation decision.
 
 
 9
 7 U.S.C. Sec. 136n controls judicial review of the Administrator's decisions under FIFRA. Section 136n provides:
 
 
 10
 (a) District Court Review.--Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States.[2]
 
 
 11
 (b) Review by court of appeals.--In the case of actual controversy as to the validity of any order issued by the Administrator following a public hearing, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing [a petition] in the United States court of appeals.... Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part....
 
 
 12
 7 U.S.C. Sec. 136n (Supp. IV 1986 & Oct. 25, 1988 amendments). The processors argue that section 136n(b) is inapplicable, and thus we lack jurisdiction, because the Administrator refused to hold a "public hearing."
 
 
 13
 We conclude that 136n(b)'s public hearing requirement is satisfied when the EPA conducts proceedings in which interested parties are afforded an opportunity to present their positions by written briefs and a sufficient record is produced to allow judicial review. Environmental Defense Fund, Inc. v. Costle, 203 U.S.App.D.C. 340, 631 F.2d 922, 926-32 (1980), cert. denied, 449 U.S. 1112, 101 S.Ct. 923, 66 L.Ed.2d 841 (1981); see also Humane Soc'y of the United States v. EPA, 790 F.2d 106, 110-12 (D.C.Cir.1986). In the present case, the Administrator considered the ALJ's decision, together with various parties' written exceptions to the decision, objections to the settlement, and responses in support of the decision and settlement. The proceedings were conducted pursuant to notice. The Administrator prepared and filed a comprehensive Final Order approving the settlement. The administrative record is adequate to permit judicial review. The proceedings qualified as a "public hearing" and we have jurisdiction. Costle, 631 F.2d at 932.[3]
 
 
 14
 Having concluded that we have jurisdiction to review the cancellation decision, we now consider our jurisdiction to review the existing stocks provisions which were incorporated into the Administrator's final order.
 
 
 15
 In his final decision approving the settlement, the Administrator determined that, under FIFRA, the existing stocks issues were not legally a part of the cancellation hearing. In re Cedar Chem. Co., FIFRA Nos. 590 et al., slip op. at 8 n. 9 (June 9, 1988).[4] "[E]xisting stocks can be included in a FIFRA cancellation hearing" only when "the notice calling the hearing voluntarily identifies and includes existing stocks as an issue for examination." Id. In the present case, "the notice calling the hearing did not identify existing stocks as being among the issues for resolution at the hearing." Id.
 
 
 16
 We hold that this construction of FIFRA's notice requirement by the Administrator is reasonable and, therefore, controlling. See Mesa Verde Constr. Co. v. Northern California Dist. Council of Laborers, 861 F.2d 1124, 1135 (9th Cir.1988) (en banc) (discussing our deference to the construction of statutes by agencies). Moreover, the contrary result would be very unfair to NCAP. The notice of intent to cancel did not even hint that NCAP's interests could be adversely affected by an existing stocks order resulting from the cancellation hearing. See 51 Fed.Reg. 36,650 (1986); cf. Costle, 631 F.2d at 924-25 (cancellation notice informed the environmentalists that the Administrator intended to permit certain uses of the pesticide to continue).
 
 
 17
 Because the existing stocks provisions were not legally a part of the cancellation hearing, the provisions cannot be considered part of an order "following a public hearing" within the meaning of 7 U.S.C. Sec. 136n(b). Normally, as an order not following a public hearing, jurisdiction to review the existing stocks provisions would lie in the district court. 7 U.S.C. Sec. 136n(a); cf. National Coalition Against the Misuse of Pesticides v. Environmental Protection Agency, 867 F.2d 636, 642 (D.C.Cir.1989) (review of existing stocks provisions originated in the district court). However, a bifurcated review of the cancellation provision and the existing stocks provisions would frustrate Congress' goal of efficient judicial review. Therefore, we accept the Administrator's invitation to transfer original jurisdiction over NCAP's cross complaint to our court under 28 U.S.C. Sec. 1631 (1982) and to take jurisdiction pursuant to the type of ancillary jurisdiction described in Abramowitz v. EPA, 832 F.2d 1071 (9th Cir.1987) and Kamp v. Hernandez, 752 F.2d 1444 (9th Cir.), modified, 778 F.2d 527 (1985). See Gioda v. Saipan Stevedoring Co., 855 F.2d 625, 629 (9th Cir.1988) (discussing the requirements for such transfers); In re McCauley, 814 F.2d 1350, 1350-51 (9th Cir.1987); S.Rep. No. 275, 97th Cong.2d Sess. 11, 1982 U.S.Code Cong. & Admin.News 11, 21 (explaining the purpose of section 1631).[5]
 
 MERITS
 A. The Cancellation Provisions
 
 18
 The processors challenge the cancellation order on the ground that the EPA has not developed a record sufficient to justify its decision to cancel.
 
 
 19
 We must sustain the Administrator's cancellation order if the order "is supported by substantial evidence when considered on the record as a whole." 7 U.S.C. Sec. 136n(b) (Supp. IV 1986). And we must give considerable weight to the Administrator's interpretation of FIFRA. See Mesa Verde, 861 F.2d at 1135 (quoting Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)); see also Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 403-04, 107 S.Ct. 750, 759-60, 93 L.Ed.2d 757 (1987). Once we determine that a "statute is silent or ambiguous with respect to the specific issue, the question ... is whether the agency's answer is based upon a permissible construction of the statute." Mesa Verde, 861 F.2d at 1135 n. 11.
 
 
 20
 The Administrator argues that, as a matter of law, once both of the remaining dinoseb registrants agreed to the cancellation of their registrations, the Administrator had no obligation to conduct further analyses or proceedings pertaining to cancellation. The Administrator contends that FIFRA does not give nonregistrant users (the processors in our case) the right to prevent a settlement and force further proceedings, once the registrants have agreed to abandon their registrations. We agree. The Fifth Circuit's decision in McGill v. EPA, 593 F.2d 631, 636-37 (5th Cir.1979), directly supports the Administrator's position.
 
 
 21
 Moreover, the interpretation advanced by the Administrator and the analysis by the Fifth Circuit in McGill are consistent with FIFRA and the 1988 amendments. See generally Federal Insecticide, Fungicide, and Rodenticide Act Amendments of 1988, Pub.L. No. 100-532, 102 Stat. 2654 (1988). We affirm the cancellation decision.
 
 B. The Existing Stocks Provisions
 
 22
 Both the processors and NCAP challenge the existing stocks provisions of the cancellation order. The processors contend that the Administrator erred by not permitting a wider use of existing stocks. NCAP contends the Administrator erred by not prohibiting all use of existing stocks.
 
 
 23
 "The Administrator may permit the continued sale and use of existing stocks of a pesticide whose registration is canceled ... to such extent, under such conditions, and for such uses as he may specify if he determines that such sale or use is not inconsistent with the purposes of this subchapter and will not have unreasonable adverse effects on the environment." 7 U.S.C. Sec. 136d(a)(1) (as modified by the technical 1988 amendment). "The term 'unreasonable adverse effects on the environment' means any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. Sec. 136(bb).
 
 
 24
 Under the substantial evidence standard, we must affirm the Administrator's finding "where there is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' even if it is possible to draw two inconsistent conclusions from the evidence." St. Elizabeth Community Hosp. v. Heckler, 745 F.2d 587, 592 (9th Cir.1984). "Although the substantial evidence standard of review is relatively deferential to the agency factfinder, our review still must be 'searching and careful, subjecting the agency's decision to close judicial scrutiny.' " Containerfreight Corp. v. United States, 752 F.2d 419, 422 (9th Cir.1985).
 
 
 25
 The processors' arguments that a wider use of existing stocks should have been permitted are not persuasive and, for the most part, are moot because the 1988 growing season had passed prior to our previously published decision in this case. See Northwest Food Processors Ass'n v. Reilly, 869 F.2d 542 (9th Cir.1989). Moreover, the EPA adequately justified its crop specific restrictions on the use of existing stocks. In particular, the EPA provided ample justification for singling out caneberries in the 1989 season. After a careful review of the record, we conclude that substantial evidence supports the Administrator's decision to restrict the use of existing stocks to the specified crops.
 
 
 26
 NCAP supports its arguments against any use of existing stocks by identifying several alleged flaws in the EPA's analysis. NCAP contends these flaws caused the EPA to underestimate the risk of continued dinoseb use.
 
 
 27
 While some of NCAP's criticisms may be valid, after reviewing the record as a whole, we conclude that substantial evidence supports the Administrator's decision to permit the use of existing stocks. First, the immediate discontinuance of the use of dinoseb on all crops in the Pacific Northwest could have significant adverse economic consequences for the region. See Love, 858 F.2d at 1351-52. In Love, we reversed the EPA's emergency suspension order because the Administrator had failed to consider these economic consequences. Id. at 1360-62. In light of Love, the Administrator's special provisions for the limited use of existing stocks of dinoseb on specified crops during the 1988 and 1989 growing seasons seem reasonable.
 
 
 28
 Second, the Administrator approved the existing stocks provisions as part of a unitary settlement agreement negotiated between the EPA and the two remaining dinoseb registrants. The procedural posture of the case forced the Administrator to choose between accepting the settlement agreement including the existing stocks provisions on the one hand, or rejecting the settlement and risking the outcome of a formal cancellation hearing on the other. The latter option entailed the risk that cancellation might be denied. Cf. Love, 858 F.2d at 1358 (overturning the Administrator's order suspending the use of dinoseb). And even if successful, proceeding with a full cancellation hearing could have involved months or years of delay before the registrations were actually cancelled, if indeed they ever were. Presumably, given our decision in Love, the production and use of dinoseb might continue pending entry of a final cancellation order.
 
 
 29
 In this context, the Administrator could reasonably conclude that approving the entire settlement agreement, even with the provisions permitting the limited use of existing stocks of dinoseb during the 1988 and 1989 growing seasons, would result in a lower level of dinoseb use than would be the case if the settlement were rejected and the matter proceeded to a full cancellation hearing.
 
 
 30
 The D.C. Circuit recently reached a similar conclusion in National Coalition Against the Misuse of Pesticides v. Environmental Protection Agency, 867 F.2d 636, 642 (D.C.Cir.1989). As the D.C. Circuit explained: "If entering into a settlement [which allows the use of existing stocks] provides for less use than would be the case if the Administrator initiated formal cancellation proceedings, it seems rather obvious that the settlement, at minimum, meets the statutory test of reasonableness." Id.
 
 
 31
 In summary, we conclude that the Administrator's decision to accept the existing stocks provisions is supported by substantial evidence. Therefore, we sustain the Administrator's existing stocks order.[6]
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 We reject NCAP's request for additional time to file its motion to intervene and deny the motion to intervene as untimely
 
 
 [2]
 In October 1988, Congress amended section 136n(a). See Federal Insecticide, Fungicide, and Rodenticide Act Amendments of 1988, Pub.L. No. 100-532, Sec. 801, 102 Stat. 2654, 2682 (1988). The amended text of 136n(a) has been reprinted above. The amendments are technical and do not affect our reasoning
 
 
 [3]
 The processors' argument to the contrary is unpersuasive. They rely primarily on our decision in Amvac Chemical Corp. v. United States Environmental protection Agency, 653 F.2d 1260 (9th Cir.1981). Amvac is inapposite. Amvac expressly limited its holding to cases involving preliminary procedural questions rather than final substantive questions. Id. at 1263. And Amvac implicitly limited its holding to cases which do not turn on questions of statutory interpretation. Id. at 1265 (distinguishing Costle because Costle "turned ultimately on statutory interpretation"). The critical question concerning the dinoseb cancellation decision is: what are the rights of nonregistrant pesticide users after all of the registrants have acquiesced in the termination of their registrations. The answer to this substantive question turns on our construction of FIFRA
 
 
 [4]
 Nonetheless, the Administrator decided that he could, as an exercise of his discretionary powers, consider the objections to the existing stocks provisions which were raised by AFFI and the environmental groups. Id. at 9-13 ("AFFI"); id. at 13-15 (the environmental groups)
 
 
 [5]
 Both Abramowitz and Kamp involved the interpretation of the jurisdictional provisions of the Clean Air Act. These cases held that "when the challenge to agency action [which would otherwise be within the district court's jurisdiction] is 'embedded in a challenge to the validity of an implementation plan,' jurisdiction lies in the circuit court reviewing the implementation plan." Abramowitz, 832 F.2d at 1076 (quoting Kamp, 752 F.2d at 1454). In Kamp and Abramowitz, we took jurisdiction over matters otherwise destined for the district court because "[t]o hold otherwise would create 'a danger that two proceedings involving essentially the same agency action could occur simultaneously.' " Abramowitz, 832 F.2d at 1076 (quoting Kamp, 752 F.2d at 1454)
 
 
 [6]
 The parties raise a number of other issues in their briefs and other pleadings filed with this court. These issues do not merit separate discussion